ISMAEL MOSCOSO, Plaintiff and Appellant, *v.* ISMAEL RIVERA, Defendant and Appellee.

No. 11006. Argued March 2, 1954.—Decided May 14, 1954.

*Práxedes Álvarez Leandri* for appellant. *Aníbal Padilla* for appellee.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

In the former District Court, Ponce Section, Ismael Moscoso filed a complaint against Ismael Rivera, praying for

a declaratory judgment to determine that Ismael Rivera neither was nor is the natural acknowledged son of Ismael Moscoso. The Ponce Court held that the complaint does not state facts sufficient to constitute a valid claim for declaratory judgment and dismissed it. Ismael Moscoso has appealed from that judgment.

Two essential problems are raised on appeal. The first refers to the power of our courts to render declaratory judgments as to the status, or lack of status, of a person as the child of another, or as to the paternity or lack of paternity of a person with respect to another. Assuming the existence of such power, the second problem is related to the sufficiency of the facts alleged in the complaint introduced in the instant case to warrant declaratory relief.

 Under our Declaratory Judgments Act approved April 25, 1931 (Sess. Laws, p. 378), our courts have the power to render declaratory judgments as to the status of a person and as to the legal nexus between persons. The pertinent Sections of that Act provide the following:

"Section 1.— (Scope).—In their respective jurisdictions district courts shall have authority to declare rights, statutes * and other judicial relations although other remedies are or may be sought. A motion for a declaratory decision or judgment shall not be deemed sufficient ground on which to go against any proceeding or action. In form or as regards its effect, a declaration may be affirmative or negative and shall be as efficacious and as binding as final judgments or decisions.

"Section 2.— (Power to construe, etc.).—Every person interested in a deed, will, written contract or other document constituting a contract, or whose rights, status or other judicial relations are affected by any statute, municipal ordinance, contract or franchise, may obtain a determination of any difference in regard to the construction or validity of said statutes, ordinances, contract or franchise, and also a declaration of the rights, status or other judicial relations derived therefrom.

"Section 3.— (Prior to non-compliance).—A contract may be construed prior or subsequent to non-compliance therewith.

* Thus in original. Probably should read statuses.

"Section 4.— (Executor, etc.).—Executors, receivers, trustees, tutors, creditors, legatees, heirs, successors in interest or *cestuis que trust* acting in such capacities or in representation of other persons concerned, may apply for and obtain a declaration of rights or judicial relations in all cases where trusts, estates, or the property of minors, incapacitated or insolvent persons are administered:

"(a) To determine classes of creditors, legatees, heirs, successors in interest and others; or

"(b) To direct executors, administrators or trustees to execute or refrain from executing any certain act in their capacity as such; or

"(c) To determine any question arising in the administration of the property or trust, including construction of wills and of other documents.

"Section 5.— (Enumeration not exclusive).—The enumeration made in sections 2, 3 and 4, shall neither limit nor restrict the exercise of general powers conferred by section 1 in any proceedings for a declaratory remedy, provided a judgment or decree will put an end to the controversy or clear any uncertainty.

"Section 6.— (Discretion).—The court may refuse to render or enter a declaratory judgment or decree when such judgment or decree, if rendered or entered, will not put an end to uncertainty or to the controversy giving rise to the proceedings.

"Section 7.— (Review).—All orders, judgments and decrees authorized hereunder may be reviewed just as any other orders, judgments and decrees.

". . . . . . . .

"Section 11.— (Parties).—When a declaratory remedy is sought, all persons having or alleging an interest which may be affected by the declaration, shall be included as parties, and no declaration shall impair the rights of persons not parties to the proceedings. In any proceeding where the validity of a municipal ordinance or franchise is at issue, the corresponding municipality shall be included as a party and it shall have the right to be heard. In the case of unconstitutionality of a statute, ordinance or franchise, the Attorney General shall also be served notice of the proceedings, with a copy thereof, and shall have the right to be heard.

454

"Section 12.— (Construction).—Because of its nature, this Act is a law of remedies, its purpose being to authorize the determination of rights, statuses and other judicial relations and to allow remedies against doubt or uncertainty of such rights, statuses and other judicial relations; and it shall be liberally construed and applied.

"Section 13.— (Definitions).—The word 'person' whenever used in this Act, shall be understood to mean any person, partnership, stock company, association or unincorporated partnership, or a municipal or other corporation.

"Section 14.— (Separable provisions).—The different sections and provisions of this Act, except sections 1 and 2, are hereby declared independent and separable, and the nullity, in the proper case, of any part or aspect thereof shall not affect the rest of the law nor shall it be cause of its nullity or ineffectiveness.

"Section 15.— (Uniformity of construction).—This Act shall be construed and considered so as to effect its general purposes of making the law uniform in jurisdictions adopting it, and in the sense of making it harmonize, as far as possible, with the Federal laws and regulations on the subject of declaratory judgments and decrees." [1]

It is true that under §§ (2), (3) and (4) the declarations on status are limited to certain types of suits relating to contracts, wills, municipal ordinances, statutes or franchises, but under § 5 the enumeration made in §§ (2), (3) and (4) does not limit or restrict the exercise of general powers conferred by § (1), among which is included the authority of the courts to render declaratory judgments as to status and other judicial relations. Construing declaratory judgments acts identical with ours, the rule to which we subscribe has established that a court may render a declaratory judgment as to the status of a person claiming

---

[1] Rule 57 of the Rules of Civil Procedure provides:

"The procedure for obtaining a declaratory judgment pursuant to Act No. 47, approved April 25, 1931, shall be in accordance with these rules. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar."

to be the natural or illegitimate child of another, as to paternity and filial relations, even in those cases not relating to contracts, documents, statutes, municipal ordinances, wills or franchises. *Miller* v. *Currie*, 242 N.W. 570; *Carlson* v. *Bartels*, 10 N.W. 2d 671; *Morecroft* v. *Taylor*, 225 App. Div. 562, 234 N.Y.S. 2; *Melis* v. *Department of Health*, 24 N.Y.S.2d 51; Borchard, *Declaratory Judgments*, 2d. ed. pp. 284 and 484 *et seq.*, Anderson, *Actions for Declaratory Judgments*, 2d ed., Vol. 2, p. 1468 *et seq.* § 643; 16 *Am. Jur.* 316; 62 Harv.L.Rev. 787, 847, "Developments in the Law of Declaratory Judgments." The judicial power to declare filial statuses appears clearly from our Declaratory Judgments Act. Sections (2), (3) and (4) do not limit the broad language of § (1). *Superior Dairy* v. *Stark County Milk Producers' Ass'n.*, 100 N.E. 2d 695.

■■ The cases cited dealt with claims brought by the presumptive children for the affirmative declaration of their status. Plaintiff in the case at bar does not seek an affirmative or positive declaration of paternity. On the contrary, here he is not the presumptive son, but someone who prays for a judgment declaring, in negative form, that he is not the father of the defendant. This is a case where the plaintiff challenges the existence of a specific *status*. But this distinction does not destroy the appropriateness of a declaratory decree. Section (1) of the Declaratory Judgments Act specifically provides that "in form or as regards its effect, a declaration may be affirmative or negative and shall be as efficacious and as binding as final judgments or decisions." Under the afore-cited Act, a petition may be filed for a negative declaration that plaintiff is exempt from liability or free from any obligation to the defendant, that is, the declaratory judgment performs an immunity function. *Merchants Mut. Casualty Co.* v. *Leone*, 9 N.E. 2d 552; *Faulkner* v. *City of Keene*, 155 A. 195; *Maryland Casualty Co.* v. *Hubbard*, 22 F. Supp. 697; 1 C.J.S. 1953 Supplement, p. 112; 16 Am. Jur. 292, § 17, footnotes 14, 15 and 16, and

p. 338, § 72; 87 A.L.R. 1209, 1249. In the case of *Aetna Life Ins. Co.* v. *Haworth*, 300 U. S. 227, it was held that an insurance company could validly file a petition for a negative declaration that an insured was not totally disabled and that since the premiums had not been paid, the company was therefore freed from liability. The Supreme Court of the United States said, in part, the following at page 244:

"But the character of the controversy and of the issue to be determined is essentially the same whether it is presented by the insured or by the insurer. . . . It is the nature of the controversy, not the method of its presentation or the particular party who presents it, that is determinative."

In Borchard, *op. cit.*, the following is stated at page 21:

"The action for a so-called negative declaration is simply a broadening of the equitable action for the removal of a cloud from title to cover the removal of clouds from legal relations generally, under circumstances where the courts believe a useful purpose to be thereby served. . . . [In those cases plaintiff is a prospective defendant].

"The importance of the power to sue on the part of an endangered or potentially endangered or disputed possessor of rights is that judicial protection may be obtained before the danger has ripened into catastrophe and before the other party has commenced suit to enforce his claims . . . . Security and certainty in legal relations is a matter of public as well as private interest. . . . . ."

Actually, the purpose of the law, in seeking the quieting and the elimination of uncertainty or insecurity (§ 12), may be achieved by way of a negative declaration of nonexistence of rights, at the instance of a plaintiff who legitimately believes that his interests are jeopardized by a possible judicial claim by another person. In that case, plaintiff may anticipate defendant's action, and himself raise the controversy. But a real controversy must exist to be considered and decided. In that case the method used for judicial relief is irrelevant. Either party having opposing interests may seek its deter-

mination. The declaration could determine the existence as well as the nonexistence of specific rights.

█ It could be argued that under our legal system, irrespective of the Declaratory Judgments Act itself, there is no cause of action whatever or any legal power to challenge the filiation itself of a natural or illegitimate child, that is, to prove judicially that a person is not the natural or illegitimate child of the plaintiff, and therefore, that a declaratory relief supplying such omission of the substantive right should not be granted. Under our Civil Code the husband or his heirs may challenge an alleged legitimate son, upon fulfillment of certain requirements. Section 126 of our Civil Code provides, in part, that the recognition of a child not having the qualifications provided for in paragraph 1 of § 125 can be disputed by whomever may be affected thereby. Generally speaking, a recognition made by a father may not be annulled by virtue of subsequent statements or deeds of the father himself. The complaint filed in the case at bar does not seek to challenge a former recognition but, on the contrary, alleges that the plaintiff has never recognized the defendant, and that the latter is not the plaintiff's son and has never met the requirements of § 125 which refer in part to the uninterrupted possession of status and to the concubinage of the parents.

██ Even assuming that under our substantive law plaintiff has no cause of action to challenge defendant's filiation, or his status as plaintiff's son, the Declaratory Judgments Act affords such judicial relief. It is a statute creating new remedies, which enlarges the old traditional remedies and, in order to dissipate uncertainties and contribute to the attainment of social peace, it affords the opportunity of anticipating the future exercise of specific causes of action by way of a previous declaration of rights. It is precisely a remedy prior to the actual exercise of a conventional cause of action. In the afore-cited case of *Aetna Life Ins. Co.* v. *Haworth, supra,* the Supreme Court of the United States

holds that the operation of the Declaratory Judgments Act is procedural only, and is inspired with the purpose of broadening the traditional remedies. Therefore, a cause of action is not essential to a proceeding for a declaratory judgment, that is, that there shall have been a violation of a right or a breach of duty. 1 C. J. S. 1027. Jurisdiction under a declaratory judgment act is not confined to cases in which the parties, or either of them, have a cause of action apart from that conferred by an act other than the Declaratory Judgments Act, since if such limitation were established the fundamental purpose of the latter would be defeated. 16 Am. Jur. 286, § 12. That Act has a prophylactic purpose, that is, to anticipate the materialization of future causes of action, (*Gully* v. *Interstate Natural Gas Co.*, 82 F. 2d 145, certiorari denied in 298 U. S. 688), and to render judicial help in ending controversies which have not reached the stage where other direct legal relief is immediately available. 16 Am. Jur. 281. The purpose of the Act is to establish an innovation in the granting of judicial remedies, and that purpose would be thwarted if the sphere of application were limited to the pre-existent remedies, or to the traditional causes of action. To oppose a declaratory judgment on the ground that such remedy is not permissible under other laws would tend to destroy the practical effectiveness and the very reason for being of the Declaratory Judgments Act, which extends the margin of utility of courts to entertain new matters. Considering the attendant circumstances, assuming that the plaintiff lacks a cause of action under other laws to file suit as to defendant's status, the latter, if he really considers himself the plaintiff's son, could file an action of filiation. We have already seen that a plaintiff, through an action for declaratory relief, may anticipate the filing of a possible future claim by defendant.

■ Our Declaratory Judgments Act is not inconsistent with the traditional system of the civil law. Attention has been called precisely to the fact that the remedy of declara-

tions of rights has always existed in Spain, either in the *juicios declarativos* or in the actions of *"jactancia"*, which aimed to obtain a judicial declaration as to the existence or non-existence of rights when a defendant extrajudicially alleged or boasted of specific rights against the plaintiff. Borchard, *op. cit.*, p. 114, 115; *Enciclopedia Jurídica Española*, Vol. 19, p. 919, Vol. 20, p. 203; 62 Harv. L. Rev. 790, where it is stated that "the broad declaratory action is an ancient institution in the civil law." In the Judgment of September 27, 1912 of the Supreme Court of Spain commented in Volume 19, pages 920 and 921 of the *Enciclopedia Jurídica Española,* it is held that Law 46, tit. 2, *Partida* 3, regulating the action of *jactancia,* has not been repealed by the provisions of the Civil Code.

▆▆▆▆ Therefore, we reach the conclusion that, under the Declaratory Judgments Act, our courts have the power to render a declaratory judgment to the effect that a defendant is not the son of the plaintiff. But the Ponce Court, in the case at bar, dismissed the complaint essentially on the ground that the pleadings did not state a real controversy. It is substantially alleged in the complaint that the defendant, for sometime now, has insisted in calling himself Ismael Moscoso, and as such entered, served and was discharged from the United States Army, and the defendant alleges that he uses that last name because he is the natural son of plaintiff, which is not true and which Ismael Rivera broadcasts and throws to the four winds, to the natural detriment, prejudice, and injury to plaintiff, who is affected in his family, social, and commercial relations; that he has never been known to have a son by the name of Ismael Rivera and that for that reason he has been personally asked about the new alleged family nexus between plaintiff and defendant; that the plaintiff has asked defendant to cease in his unfounded imputations of kinship and the defendant continues broadcasting his vicious imputations, to the natural uneasiness,

prejudice, and injury of plaintiff; that the defendant was born on September 24, 1917 and was registered as the natural son of Dolores Rivera; that the plaintiff never lived in concubinage with Dolores Rivera, defendant's mother, at any time or occasion whatever; that the defendant is not, nor has ever been in the uninterrupted possession of the status of natural son of the plaintiff and that the latter has never possessed nor possesses any undisputed document where he expressly recognizes defendant's paternity, and that defendant's attitude is to pretend to be plaintiff's son. Plaintiff prays for a declaratory decree to the effect that there has never been any concubinage, possession of status or undisputed document required by law and that Ismael Rivera is not the acknowledged natural son of Ismael Moscoso.

A complaint for declaratory relief should disclose the existence of an actual controversy between parties having adverse legal interests. 16 Am. Jur. 333; 62 Harv. L. Rev. 825; *Katz Inv. Co.* v. *Lynch*, 47 N. W. 2d 800; *School Dist. No. 1* v. *School Dist. of City of Lansing*, 50 N.W. 2d 150. Basically, the question for determination is whether the facts alleged show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Maryland Casualty Co.* v. *Pacific Coal & Oil Co.*, 312 U. S. 270. It should appear in the complaint that the defendant has extrajudicially raised, affirmed, or stated positively, a claim or right adverse to that of the plaintiff, extrajudicial conflicting interests between both parties ensuing. Borchard, *op. cit.*, pp. 29, 30, 35 and 36. There must be an active antagonistic assertion of a legal right on one side, and a denial thereof on the other concerning a real, and not a mere theoretical question or issue (1 C.J.S. 1026), and an assertion that the defendant has been acting or threatens to act in such manner that there is the substantial probability that plaintiff's rights will be invaded. *Aetna Life Ins. Co.* v. *Haworth, supra.* The controversy should not be abstract,

theoretical, remote, moot or speculative, that is, it should have sufficient immediacy, and if the future injury depends on contingent facts which are too speculative in nature, an anticipated declaration of rights is inappropriate. *Eccles* v. *Peoples Bank*, 333 U. S. 426; *International Longshoremen's and Warehousemen's Union* v. *Boyd*, decided on March 8, 1954 by the Supreme Court of the United States; *United Public Workers* v. *Mitchell*, 330 U. S. 75; 1 C.J.S. 1024. An actual controversy arises when the court must deal with realities and not with an imaginary set of facts. *New Discoveries* v. *Wisconsin Alumni R. Foundation*, 13 F. Supp. 596. A court should not determine future rights in anticipation of an event that may never happen. *Skowron* v. *Skowron*, 47 N.W. 2d 326, decided in 1952.

The requirement of the existence of a real controversy is connected with the rule that the granting of a declaratory judgment, considering the latter as a remedy in equity, lies in the exercise of a sound judicial discretion. *Power Electric Co.* v. *Buscaglia, Treas.*, 63 P.R.R. 945; *Moffet* v. *Buscaglia, Treas.*, 64 P.R.R. 836; *International Longshoremen Union* v. *Boyd, supra; Eccles* v. *Peoples Bank, supra.* Such discretion is not unlimited or unbounded. *Altvater* v. *Freeman*, 319 U. S. 359, 363; *Columbia Pictures Corp.* v. *De Toth*, 26 Cal. 2d 753, 162 A.L.R. 747. It is a judicial discretion which should be exercised within certain limitations, barriers and judirical postulates. The specific public and social interests which might be impaired should be compared with the private interests of the parties, with respect to which, the magnitude and practical reality of the need of a plaintiff to obtain a declaratory judgment, as well as the effect of such remedy on a defendant in compelling him to anticipate a litigation, should be measured. The need for a declaratory judgment should be rooted in reality up to the point that the controversy is not too remote or speculative. It must be proved that the interests of justice would be well served and that the judg-

ment will be effective and adequate. As indicated in 34 *Mich. L. Rev.* 85, 88, a defendant in a declaratory judgment proceeding has an interest in not being forced to the trouble and expense of litigating a question with whose outcome he is not concerned. As it is further stated in the afore-cited essay, where the usefulness of the declaration to the plaintiff is itself doubtful, the interest which defendant has in not being forced into litigation may be enough to warrant refusing the declaration. On the one hand the possible effectiveness of the remedy must be considered. On the other hand we must not forget that the Declaratory Judgments Act grants the courts the opportunity to broaden the margin of its effective action, such a remedy having an outstanding influence in the development of the law. In the afore-cited annotation it is stated that the operative factor should refer to the comparative importance of the conflicting interests and to the probable efficiency of the remedy.

In 62 *Harv. L. Rev.* 787, 794 *et seq.*, it is stated that although it is impossible to bring all instances of justiciable controversies within any single general rubric, the basic criterion is that an issue will be deemed justiciable if it is relatively certain or there is substantial probability that coercive litigation will eventually ensue between the parties should a declaratory judgment be refused. For example, an action for declaratory judgment would be premature if plaintiff is not in danger of hostile action on the part of the defendant or if the danger is speculative and depends on uncertain contingencies which may never occur.

■ Applying the former concepts to the case at bar and considering as certain the facts alleged in the complaint, it appears from such averments that both parties have adverse legal interests and that there is a real controversy between the parties. There is a legal interest of outstanding significance as to the paternity or filiation of the defendant, that is, as to whether or not defendant is plaintiff's son. It is al-

leged in the complaint that the defendant has not only made public and positive assertions and statements that he is the son of the plaintiff, even after plaintiff called this to his attention, but also that he has acted consistently with the intention to effectuate those assertions, by using the last name of the plaintiff as his own upon entering and serving in the Armed Forces and in employing that last name in his social relations on the ground of his express contention that he is plaintiff's son. The alleged conflict is real, according to the complaint, since, on the one hand, it is alleged that the defendant has made active and antagonistic assertions of a right, and the plaintiff denies the existence of that right. The controversy is not remote and has sufficient immediacy. It does not depend on contingent, speculative or imaginary facts, but on facts and acts which have actually occurred. It appears from the complaint that the defendant has acted as though he were plaintiff's son. From the point of view of the exercise of a sound judicial discretion, the declaratory remedy does not injure any social or public interest whatever, since such interest is not infringed by the anticipated determination of a controversy as to the status of a person. The declaratory remedy affords both parties broad and adequate guarantees and opportunities in order that they may make valid, and introduce evidence to support, their respective points of view. Defendant's legitimate interests are not infringed because he is required to introduce evidence as to his actual status before plaintiff's lips are sealed by his eventual death. There is no public policy whatever indicating that the defendant should have the opportunity and the right to choose the date and occasion for the commencement of his action of filiation. Balancing conveniences, plaintiff's need and utility for settling the controversy at present is sufficiently important and relevant to warrant the fact of compelling defendant to anticipate litigation. From the averments of the complaint it does not appear that defendant is

not concerned with the determination of the controversy. We must not forget that in this appeal we have only before us the sufficiency of the complaint and we are not prejudging the intrinsic merits of the case. In his answer, and at the hearing of the case on the merits, the defendant shall have the opportunity to allege and prove that there is really no controversy between the parties and that he does not really allege that he is plaintiff's son and the litigation would end there, having specifically in mind that the question as to whether or not there exists a controversy should be first determined before considering the controversy itself. *Webster Chicago Corp.* v. *Minneapolis Honeywell Reg. Co.*, 99 F. Supp. 503. Furthermore, in order to set forth an adequate test as to the existence of a controversy and as to the way judicial discretion should be exercised, it is better to allow the development of the litigated question beyond the allegations of the complaint, since such problems may be decided more effectively in the light of the evidence introduced by both parties with full consideration of the factors that may influence the exercise of a sound discretion. 62 *Harv. L. Rev.* 826. From another point of view, it appears from the complaint that there is substantial probability of a coercive and plenary litigation in the future, since if the defendant uses the plaintiff's last name, as if he were his son, and if he publicly alleges that he is plaintiff's son the probability arises that the defendant might later file an action of filiation.

The trial court relied specifically on the case of *Somberg* v. *Somberg*, (N.Y.) 188 N.E. 137, to reach the conclusion that from the averments of the complaint there appears no real controversy between the parties. That was a case of a declaratory judgment as to matrimonial status. Plaintiff was a woman married to one of the defendants and she had not divorced him. The husband lived with another woman as husband and wife, from which relationship a child was born. The real wife prayed for a declaratory judgment to the effect

that she was the lawful wife of the co-defendant. It was held that there was no real controversy between the parties (1) because plaintiff's status as wife of the co-defendant was officially guaranteed since they were not divorced and (2) because the false allegation that the two co-defendants were married to one another was based only on rumor. It was held that a declaratory judgment under such circumstances would be futile. Irrespective of the fact that that opinion has been criticized because of the fact that the plaintiff had a legitimate interest, from the point of view of her social relations, in denying falsehoods as to her marital status, since the false claim was supported by ostensible evidence through the co-defendants acting publicly as husband and wife and was therefore of greater importance than a mere rumor (Borchard, *op. cit.*, pp. 45, 480), the case cited differs from the case at bar. Here the fact that the defendant is not plaintiff's son has not been officially sanctioned, and the allegations and actions of the defendant go beyond the category of mere rumor.

In the case of *Columbia Pictures Corp.* v. *De Toth, supra,* the Supreme Court of California reversed the judgment of the lower court dismissing an action for declaratory judgment and held that such exercise of discretion was arbitrary, and that if the complaint sets forth facts and circumstances showing that a declaratory adjudication is entirely appropriate, the court may not properly refuse to assume jurisdiction.

The judgment appealed from will be reversed and the case remanded to the Ponce Court for further proceedings not inconsistent with this opinion.

Mr. Justice Sifre and Mr. Justice Belaval concur in the result.

---

Mr. Justice Negrón Fernández, dissenting.

The situation of children born out of wedlock—natural and illegitimate not natural, and the natural children of the decade from 1942 to 1952—is tinged with tragedy by the

decision which, against well known juridical principles, and without any precedent in any other jurisdiction, this Court delivers today in the instant case.

Applying a procedural and remedial statute, such as the Declaratory Judgments Act, the court lays the foundation for the destruction of substantive rights of filiation of those children, depriving them of the protection of the Civil Code and of Act No. 229 of May 12, 1942, as amended by Act No. 243 of May 12, 1945, which provides for the proper action to enforce those rights, since the exercise of such action is left to the pleasure and fancy of the father who by law is compelled to recognize a natural child when he has failed to do so spontaneously. Actually, today's decision grants the father an action *to deny filiation*—and an action to deny support—and destroys, from its deepest roots, the very foundation of the law which centuries of affliction and social injustice have slowly but steadfastly molded into a concretion of real human values.

Henceforth, the natural child shall have to exercise the right of filiation, not during the lifetime of the presumptive parent, or a year after his death, or in case of his death during the child's minority, within the next four years after attainment of majority, pursuant to § 126 of the Civil Code, 1930 ed., but whenever the father in an anticipated and prophylactic defense against a possible action of filiation, chooses to engage him in litigation.

Henceforth, the natural child shall have to litigate at his father's fancy when his eyes have not yet blinked at the world or even caught a glimpse of the features of the very man who begot him.

And why not litigate when it is still in the mother's womb, on the theory that the mother points at plaintiff as responsible for her pregnancy, and the latter wishes to clean his name once and for all from the stigma which he rejects and to avoid a judicial action for support upon the child's birth?

A person who feels aggrieved because of public rumors, and public representation or ostentation that someone is *his child* and is not satisfied with a public denial may file the proper judicial action—limited in its judicial consequences—not for a denial and final adjudication of the right of filiation against the one who so acts, but to preclude the latter in the absence of an adjudicated civil status, from usurping his name or assuming a status which in his present condition he may not enjoy.

In an action for a declaratory judgment of filiation filed by the child—not by the father—whether called an *action of filiation or a declaratory judgment*, the judgment, if favorable to him, has the effect of establishing his civil status, the judicial nexus with the defendant, which is the source of all rights and duties under the law. Although the civil status of the prevailing child produces judicial effects from its birth, it has not legal force until it is adjudicated by the court.

The Declaratory Judgments Act, being procedural in nature, does not create a *cause* of action, it merely provides a remedy. It does not supply the *cause*, although it authorizes the action. By the nature, purpose and useful effectiveness of that law, a declaratory judgment rendered under it should definitively settle a controversy. As such, the judgment operates as *res judicata* in a subsequent suit between the same parties where the same issue is raised. *Cause* for the exercise of an action, in that sphere, means "the underlying foundation, the origin or ground of an action," 8 Manresa, *Comentarios al Código Civil* 237, 238; it means "the ground or reason for a petition, the *action* being the mere procedural modality, essential to make the cause effective on trial." Judgment of the Supreme Court of Spain of February 15, 1921.

The Civil Code and Act No. 229, *supra*, do not grant the natural father a cause of action to *deny filiation* which might serve as a shield against the right of the child to file an action

of filiation and thus compel the child to litigate prematurely and conclusively the substantive right which the law in turn grants to the child to *oblige* the father to recognize him. Section 125 of the Civil Code, 1930 ed., upon establishing that "the father is obliged to recognize the natural child" under the conditions there cited, created a legal responsibility on the father, with the corresponding right on the part of the child to claim it, within the provisions of § 126 of the same legal code. The statutory term within which the action may be exercised by the child is a limitation on the obligation of recognition imposed on the father. The term for bringing the action is part of the essence of the child's right which is lost only if not claimed within the statutory period. The obligation of the father and the remedy of the child have been established by the Code itself, and the limitations on the child's remedy should be treated as limitations on its substantive right. The limitation period for demanding filiation "affects the substance of so important a right," as held by the Supreme Court of Spain in the Judgments of December 28, 1906, April 22, 1908, April 2, 1909 and June 24, 1930 and "the very existence of the right," since "Section 135 [Spanish Civil Code, our 125] does not deal with mere rules of procedure," Judgments of September 23, 1898 and March 27, 1920. The action of filiation under § 135 of the Spanish Civil Code (our § 125) has no limitation period within which *to commence* the action during the father's lifetime, for § 137 (our 126) only limits the action after the father's death, and if the child is a minor within the four years following the attainment of majority. Judgments of June 23, 1902 and of March 26, 1904. *Cf. The Harrisburg*, 119 U. S. 199, 30 L. Ed. 358, and the dissenting opinion of Justice Jackson in *Wells* v. *Simonds Abrassive Co.*, 345 U. S. 514, 519, 97 L. Ed. 1211, 1216; *Parker* v. *Fies & Sons*, 243 Ala. 348–350, 10 S. 2d 12; *Lewis* v. *Reconstruction Finance Corporation*, 177 F. 2d 654–5. The Declaratory Judgments Act, being procedural in

nature, can not destroy the substantive right of a natural child to its filiation, by depriving it of the right of action under the terms fixed by the Code. That is, actually, the scope of today's decision in this case.

The Court relies on the provisions of § 1 of the Declaratory Judgments Act of April 25, 1931, which authorizes our courts "to declare rights, *statutes* * and other judicial relations although other remedies are or may be sought." (Italics ours.) Such declaration may be "in form or as regards its effects, . . . . affirmative or negative and shall be as efficacious and as binding as final judgments or decisions." Not a single judicial precedent is cited by the court in connection with declaratory judgments—as to children's status of illegitimacy—other than suits where plaintiff himself is the child. No precedent whatever is cited where by way of declaratory relief, the father brings an *action to deny filiation*. Obviously, it must be so. The Declaratory Judgments Act, which is a remedial law presupposes a juridical relation—not an absence thereof—between the parties, whose uncertainty and insecurity call for the determination of these uncertain or insecure rights under such a juridical relation. As stated in the dissenting opinion in *Morecroft* v. *Taylor*, 225 App.Div. 562, 564, 234 N.Y.S. 2, 9 (1929), the declaratory judgment "grant [s] no . . . social status and otherwise [would] be a mere brutum fulmen as to future temporalities and accomplishing nothing but disgrace in the present."

The fundamental question in the instant case is not whether the declaratory judgment proceeding offers the defendant broad opportunities to litigate the question raised in the complaint. As to the rights of natural children, the question hinges on whether a remedial law may destroy substantive rights. The State, because of the social transcendence of those rights has particularly consecrated and regulated them. The scope that other courts may have attributed

---

* So in original. Probably should read statuses.

to the Declaratory Judgments Act in cases involving personal or property rights should not be regarded as a standard for the construction that we are to give to that law in cases involving the rights of children. In his concurring opinion in *May* v. *Anderson*, 345 U. S. 528, 536, 97 L. Ed. 1221, 1228, Justice Frankfurter holds: "Property, personal claims, and even the marriage status . . . generally give rise to interests different from those relevant to the discharge of a State's continuing responsibility to children within her borders. Children have a very special place in life which law should reflect. Legal theories and their phrasing in other cases readily lead to fallacious reasoning if uncritically transferred to determination of a State's duty towards children."

I do not believe that the Declaratory Judgments Act is "inconsistent with the traditional system of the Civil Law," because it has not been adopted to defeat substantive rights, nor does it fall within the ambit of its jurisdictional consequences. The action of *jactancia*, Law 46 Title II, *Partida Tercera*,— which according to the Judgment of September 27, 1912 of the Supreme Court of Spain cited in the opinion of the Court, has not been repealed by the provisions of the Spanish Civil Code, —since it was not "a right of substantive or civil nature," it did not or could not have the effect of repealing, or in turn of being repealed, by substantive provisions of law. The action of *jactancia*—which was an exception to the general rule that a person may not be compelled to file suit against his will—has been practically made an unnecessary remedy with the development of the actions of libel and slander and for damages. Borchard, *Declaratory Judgments*, p. 115. Such an action does not exist in Puerto Rico, but today's decision seems to adopt it under the Declaratory Judgments Act. That is not the remedial purpose of that law. If we regard it so, we would be denying its efficacy and the practical usefulness of its purpose.

In my opinion the judgment should be affirmed.