102 So.2d 493 (1958)
John LEMAIRE
v.
Luke PELLERIN et al.
No. 4605.
Court of Appeal of Louisiana, First Circuit.
April 21, 1958.
Rehearing Denied May 26, 1958.
Writ of Certiorari Denied June 27, 1958.
*494 McBride & Brewster, Lafayette, for plaintiff.
J. Minos Simon, Lafayette, for Luke Pellerin and Fidelity Mutual Ins. Co.
Dubuisson & Dubuisson, Opelousas, for Dartez and Marquette Casualty Co.
ELLIS, Judge.
On the night of April 26, 1953, an automobile collision occurred on the Kaplan-Abbeville highway which is two laned and constructed of concrete with shoulders approximately 12 feet wide and level. One of the cars involved belonged to Allen *495 Broussard and it came to rest after the accident in the ditch to the north of the highway. Sometime later the plaintiff, John Lemaire, was driving his automobile from Abbeville to Kaplan and when he arrived at the scene of the wreck he recognized the car of Broussard and stopped and in doing so parked his car off of the highway on the shoulder facing a car owned by one Morvant. A pick-up truck being driven by one Dartez sometime thereafter approached the scene of the wreck and, upon being faced with a waving flashlight which was being used by a State Trooper to warn traffic of the danger and to slow down, Dartez drove his truck on the shoulder of the highway and parked it behind the plaintiff, Lemaire's, automobile. The second accident occurred and the plaintiff, Paul D. Plaisance, had parked his motor vehicle further down the highway and, in company with his wife, had walked back to the scene of the Broussard collision. Lemaire and Plaisance were standing between the former's car and the Morvant car when the defendant, Luke Pellerin, struck the rear of the Dartez truck, which in turn struck the Lemaire car, knocking Plaisance down and pinning him under the right front wheel and crushing Lemaire's legs between the bumper of his car and the Morvant car.
Suit was filed by Lemaire against Luke Pellerin and the liability insurer of the Pellerin car, Fidelity Mutual Insurance Company, and Marquette Casualty Company, liability insurer of the Dartez pick-up truck.
Suit was also filed by plaintiff Paul D. Plaisance against Luke Pellerin, Fidelity Mutual Insurance Company, Dewey Dartez, and Marquette Casualty Company. The two suits were consolidated for the purpose of trial, with separate judgments rendered in each case in favor of each plaintiff against the defendant Luke Pellerin and the liability insurer of the car which he was operating at the time of the accident; viz., Fidelity Mutual Insurance Company, but the demands of each plaintiff were rejected as against the Marquette Casualty Company, and the plaintiff Plaisance's demand against Dartez was also rejected. The defendant, Fidelity Mutual Insurance Company, appealed from both judgments. Plaintiff Lemaire appealed from the judgment of the district court insofar as it dismissed his demands against Marquette Casualty Company, and has answered the appeal praying that the judgment of the District Court be affirmed insofar as it affects the Fidelity Mutual Insurance Company.
Plaintiff Plaisance has filed a motion to dismiss the appeal on behalf of the Fidelity Mutual Insurance Company in his suit and alternatively in argument and brief asks for an affirmance of the judgment of the lower court.
No appeal from the lower court's judgment against Luke Pellerin was taken and there is no argument or contention seriously urged that he was free of negligence or that his negligence was not a proximate cause of both plaintiffs' injuries. The lower court so found and in its written reasons concisely stated, and we find correctly from a consideration of the record, the immediate facts surrounding the accident upon which it based its conclusion of negligence as to Pellerin and we take the liberty of quoting his finding of fact. We quote:
"The record is rather voluminous and much of the testimony of a minor nature is in serious conflict. However, from a reading of the entire record the court has gleaned the following facts:
"1. That at approximately 11:30 P.M. two automobiles not involved in the instant suit side-swiped each other and went into the side ditches on opposite sides of the highway.
"2. The state trooper, Ignace David, was called for the purpose of investigating this accident. He parked his car a distance west of the scene of the accident forming the basis of this suit.
*496 "3. At a time prior to the arrival of the state trooper, plaintiff, who was driving westerly on the Kaplan-Abbeville Highway, parked his car on the right shoulder of the road near the car which came to rest east of the first accident. A Wilton J. Morvant, driving easterly on the highway parked his car on the north shoulder of the road immediately in front of plaintiff's car.
"4. Plaintiff held the flashlight while the trooper completed his initial report on a prior accident.
"5. After completing his report, the trooper left the Lemaire and Morvant cars and proceeded to his car to obtain liability forms. The Dewey Dartez pickup truck approached the scene from the east and in response to a signal from the trooper, pulled to the north shoulder immediately behind plaintiff's car. The trooper observed a car coming in a westerly direction. This car was later determined to be the car driven by Luke Pellerin. The trooper attempted to flag down this approaching car by waving a flashlight and observed that the car swerved from side to side in attempting to come to a stop. It was this car that struck the Dewey Dartez pickup truck which in turn struck the plaintiff's car, causing it to pin plaintiff between his car and the car of Wilton J. Morvant. The plaintiff's car received such a blow as a result of being struck by the Dartez pickup truck which in turn was struck by the Luke Pellerin car, of sufficient force to cause the plaintiff's car to be thrown into the ditch.
"The Court is satisfied that the proximate cause of the injury inflicted upon plaintiff was occasioned by the negligence of Luke Pellerin in approaching the situation then existing on the highway at an excessive rate of speed.
"The evidence is clear that plaintiff Lemaire at the time was assisting the state trooper in the performance of a valuable service."
In addition Pellerin was guilty of negligence in not keeping a proper lookout for the testimony shows there was an estimated 40 cars parked on the shoulder of the highway, many with their lights burning, within the vicinity of the two wrecks, at the time that Pellerin approached the scene of the Broussard wreck. Had he been keeping a proper lookout he would have observed the situation and would have had his vehicle under such control as would have enabled him to stop it when warned by the State Trooper waving a flashlight, without a loss of control of his automobile or colliding with any car parked on the shoulder.
We find no manifest error in the judgment of the lower court in dismissing both plaintiffs' suits against Dartez and his insurer, Marquette Casualty Company. In the first place Dartez stopped and parked his automobile on the shoulder behind plaintiff Lemaire's car in response to the State Trooper's apparent signal with the flashlight for him to do so. Whether the trooper intended for Dartez to park is not clearly shown, however, the latter had every right to believe he was being halted by the trooper's waving of the flashlight. In the second place, the State Trooper testified clearly and positively that the Dartez truck was parked off of the paved portion of the highway, although there is some testimony by plaintiff Plaisance's wife that it was parked at an angle with a portion of the rear protruding on the highway. The record reveals that her testimony is somewhat confused on other points or facts and the District Judge correctly accepted the facts as testified to by the State Trooper and others.
In agreeing with the conclusion of the District Judge as to the position of the Dartez truck at the time it was struck by defendant Pellerin, we have not overlooked or failed to consider the argument of counsel for plaintiff Lemaire that the Dartez truck must have been parked at an angle with a portion protruding or sitting on *497 the pavement of the highway, else Pellerin would never have struck it, however, the testimony shows that when Pellerin saw the flashlight signalling him to stop or slow down he applied his brakes and began to swerve and this accounts for his striking the Dartez truck, even though it was off of the paved portion of the highway. Had he not lost control of the truck and continued straight he would never have struck it. We find no negligence on the part of Dartez and therefore no liability on the part of his insurer, Marquette Casualty Company
The defense urged in the lower court and reurged in this court by counsel for Fidelity Mutual Insurance Company as to both plaintiffs' rights to recover was a plea of contributory negligence and, further, alternatively, a plea that the plaintiffs had the last clear chance to avert the collision complained of by them. Counsel for the defendant company has another defense but we will discuss the two mentioned first.
The basis of counsel's plea of contributory negligence on the part of the plaintiff is apparently summed up by the following statements made in his brief, and we quote:
"* * * They, apparently, were not satisfied to look at the investigation of the officer from a distance, but, on the contrary, voluntarily chose to become intertwined into the physical circumstances at the scene of said accident. Motivated by the apparently uncontrollable impulse of curiosity, they both assumed the perilous position of standing between two parked automobiles, and these two automobiles were parked in front of other vehicles that were similarly parked at the site of this collision. Even the perceptive powers of a child would impart knowledge to the reasonable mind of the perilous character of their assumed position * * *."
We cannot agree with counsel's argument, for it is most natural that motorists stop on such occasions unless warned or prohibited not to do so by someone in authority, and in this case both plaintiffs gave good reasons for having stopped. They are not to be convicted of contributory negligence merely because they stopped, for whatever reason. The important fact to be considered is that both plaintiffs parked their automobiles off of the highway on the shoulder in a position of safety insofar as anyone approaching in a legal and reasonable manner might be concerned. They were standing in a place of safety, lights were burning on automobiles, and taillights and lights were burning on the Dartez truck, and they had no more reason to assume that Pellerin would negligently collide with the Dartez truck than traveling in their own proper lane on the highway that an approaching motorist is going to suddenly dart over into their lane and collide with their automobile.
We can find no basis whatsoever for the plea of last clear chance against the plaintiffs for, as stated, and practically admitted in counsel for defendant's brief, Luke Pellerin was the only one who had the last clear chance to avert the collision. Counsel argues, however, that this doctrine in order to be available to a litigant must be specially plead. It is too well settled to the contrary for it to be necessary that we cite authorities.
Counsel for the defendant next contends, and this seems to be his main defense, that since both plaintiffs allege that Luke Pellerin was driving the said automobile with the owner's consent, that it was necessary for them to prove that the ownership of the vehicle was in someone other than Luke Pellerin and that Luke Pellerin obtained the consent of this owner. Counsel for the defendant admits and so states in his brief that an examination of the insurance policy in question demonstrates that Luke Pellerin was the named insured on the original policy, but by endorsement dated March 23, 1953, the named *498 insured was changed to read Eustis J. Pellerin who is the son of Luke Pellerin. In order to prove that the automobile belonged to Eustis J. Pellerin and was therefore covered under the insurance policy, the plaintiffs introduced as an exhibit a document which on its face was a sale of the motor vehicle being driven at the time of the accident by Luke Pellerin from Luke Pellerin to Eustis Pellerin. As a result of the sale of the motor vehicle from Luke Pellerin to his son, Eustis Pellerin, the Fidelity Mutual Insurance Company, through its agent, E. J. Brassieux, attached an endorsement to the policy dated April 2, 1953 which was effective as of the date of the transfer March 23, 1953. As a result of this endorsement the policy of insurance was changed as to the insured "Eustis J. Pellerin, 1802 Charity Street, Abbeville, Louisiana." Counsel for the defendant company next contends that the act of sale was not a valid act of sale but was a simulated contract solely for the purpose of defeating the rights of the wife of Luke Pellerin to claim any interest in the particular automobile, and, therefore, as a simulated contract of sale the transfer was null and void and of no effect. Counsel further contends that there was no valid transfer of title to the automobile for the reason that Eustis Pellerin did not obtain a certificate of title from the motor vehicle office as required under Motor Vehicle Transfer Act, LSA-R.S. 32:707.
We do not believe that Luke Pellerin and particularly the defendant insurance company should be allowed to plead the turpitude or fraud of Luke Pellerin as a bar to the plaintiff's recovery and it is not necessary that we consider the case from that standpoint. The transfer of the automobile from Luke Pellerin to Eustis Pellerin was regular on its face and according to disinterested witnesses voluntary and as far as they knew apparently legal in all respects and for a valid consideration. The evidence shows that at the time of the transfer Luke Pellerin was unemployed and also that certain payments after the transfer were made by Eustis Pellerin. We therefore have a transfer which was valid and sufficient upon its face and for a valid consideration which was shown to have been paid by the purchaser, Eustis Pellerin, and, in addition, a transfer of the policy of insurance by endorsement to the purchaser, Eustis Pellerin, and upon the night of the accident Luke Pellerin was asked by the State Trooper who owned the motor vehicle he was driving and he informed this investigating officer that it was the property of Eustis Pellerin.
Counsel for the defendant argues that there was never a transfer made on the title certificate and that in view of the provisions of the vehicle certificate title law, LSA-R.S. 32:701 et seq., such a title certificate is only minimum of title to a motor vehicle in the State of Louisiana, and therefore the failure to execute it in this case to Eustis Pellerin is evidence that the parties never intended to and never did transfer title to the vehicle as contended by the plaintiff. It is well settled that the provisions of the Certificate of Title law that the buyer of a vehicle shall acquire no marketable title until he shall have obtained a certificate of title from the owner does not repeal the provisions of the LSA-Civil Code, art. 2439, to the effect that the sale is perfected as soon as there exists an agreement of the property and the price thereof, although the property has not yet been delivered nor price paid. Failure to obtain the certificate of title does not make the sale of a motor vehicle void but simply causes the title to be imperfect until the certificate is acquired. See Transportation Equipment Company, Inc., v. Dabdoub, La.App., 69 So.2d 640; Bedsole v. Lee, La.App., 78 So.2d 434; Hamner v. Domingue, La.App., 82 So.2d 105.
We believe as did the District Judge that the plaintiffs have proven the ownership of the Dodge truck to be in Eustis Pellerin at the time of the accident as well as the consent or permission by the latter to its *499 use by Luke Pellerin on the night of the accident.

Quantum
Plaintiff prior to and at the time of the accident and injury was a roustabout in the oil fields earning approximately $129 a week regularly. As a result of the accident he suffered the wounds of the back of both knees which necessitated within forty-eight hours an amputation of the left lower extremity, and two weeks a second amputation was performed to perfect the stump. Plaintiff Lemaire suffered great pain and was hospitalized for more than seven weeks and treated for approximately seven months. He has permanently lost the ability to earn a livelihood in the oil fields as a roustabout and at the time of the trial testified that he was driving a taxi making approximately $75 a month on which to support his wife and children. His hospital and medical costs amounted to $1,987.76, and the damage to his car totaled $150. Plaintiff Lemaire was 35 years old at the time of the trial and had a life expectancy of approximately 30 years. The lower court awarded a total of $17,629.34, which included damages for personal injury to the plaintiff, damages to his automobile and proven medical expenses. While this award is inadequate when considered in the light of the actual injury and damages which the record reveals that the plaintiff suffered as a result of this accident, however, the policy limit for bodily injury was $5,000 and medical payments coverage was $500 to each person, and the record shows that Luke Pellerin is not financially responsible to any amount. Undoubtedly the small coverage afforded under the policy and the final inability of Luke Pellerin to respond to any amount influenced the District Judge. In view of the limited coverage, or rather the insufficient coverage, under the policy of insurance and the financial inability of Luke Pellerin to respond to any amount insofar as the record shows, we will not disturb the award by an increase.
For the above and foregoing reasons the judgment of the lower court will be affirmed, all at the cost of the defendant, Fidelity Mutual Insurance Company.