Mrs. Louise BERGERON, Widow of Sidney J. Bergeron, Jr., Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INS. CO., Defendant,

Frederick F. HENNE, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INS. CO., Defendant.

Joseph F. HENNE, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INS. CO., Defendant.

Mrs. Odette HENNE, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INS. CO., Defendant.

Civ. A. Nos. 11324–11327.

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 19, 1961.

724

Gerald P. Fedoroff, Joseph H. Hurndon, New Orleans, La., for plaintiffs.

Porteous & Johnson, F. Carter Johnson, Jr., New Orleans, La., for defendant.

J. SKELLY WRIGHT, District Judge.

On September 18, 1960, Sidney J. Bergeron, Jr. was involved in an automobile accident resulting in his death as well as injuries to several of his passengers, including his wife. State Farm Mutual Automobile Insurance Company was Mr. Bergeron's liability insurer on a 1953 Pontiac. On August 31, 1960, during the policy period, Mr. Bergeron bought a 1960 Chevrolet, the car involved in this accident. He notified State Farm immediately of the purchase and thus brought the new car within the provisions of the policy providing 30-day coverage for the new car.

Mrs. Bergeron and the other passengers brought suit [1] under the policy for their damages. State Farm has denied coverage on the ground that Mr. Bergeron owned yet a third car, a 1957 Chevrolet, and since State Farm did not insure all vehicles [2] owned by its insured, the policy does not cover the 1960 Chevrolet involved

1. Pursuant to La.R.S. 22:655.

2. By endorsement to State Farm's policy, an owned automobile is defined as:
"(c) a private passenger or utility automobile * * * ownership * * * of which is acquired by the named insured during the policy period provided
* * * * *

"(2) the company insures all private passenger or utility automobiles or trailers owned by the named insured on the date of such acquisition and the named insured notifies the company within 30 days following such date."

in the accident. With liability undetermined, the question before the court now is plaintiffs' motion for summary judgment, limited to the specific issue of coverage. Both sides agree there is coverage if Bergeron did not own the 1957 car and no coverage if he did.

## I.

In support of its allegation that Mr. Bergeron owned a third car, defendant submits an affidavit of a State Farm claims agent to the effect that the Louisiana Motor Vehicle Bureau had notified him that a 1957 Chevrolet was registered to Sidney Bergeron, that Bergeron thus owned three cars, and that State Farm did not insure the 1957 Chevrolet. Copies of the title and registration papers accompany the affidavit. Plaintiffs respond that while title under the Louisiana Vehicle Certificate of Title Law, La.R.S. 32:701 et seq., may have been registered in the name of the deceased Bergeron, the car was actually owned by Bergeron's stepson, Edward Herzog.

In support of this position, plaintiffs submit five affidavits with supporting documents. Herzog's affidavit states that when the 1957 car was purchased he was a minor and that it was suggested that he should place the car in the name of a person of full age, namely his stepfather, Sidney Bergeron. This he did. He states that it was clearly understood that the car belonged to him and that he paid for it. The title to the car was eventually placed in Herzog's name some time after Bergeron's death. The plaintiff, Mrs. Bergeron, states substantially the same thing, including the fact that Herzog was always in possession of the car.

Roy Tannahill, the salesman who sold the 1957 car, states that it was his idea

that the title should be placed in Bergeron's name, that he fully understood that the car belonged to Herzog and that he was to pay for it. The insurance agent, through whom insurance on the 1957 car was placed, states he knew that the title to the car had been placed in Bergeron's name and the reason therefor. Furthermore, he states that Herzog paid all the insurance premiums for the car and when Herzog reached his majority in 1959, the insurance was transferred to him. The credit manager of the Gulf Oil Company Federal Credit Union, which lent the money to Herzog to buy the car, submitted records of the credit union representing a request for a loan, a chattel mortgage in Herzog's name on the car, and Herzog's payment book showing that he made all the loan payments.

## II.

The Louisiana courts have several times considered the question of ownership of vehicles in persons other than the registered titleholders. Title registration does not affect the transfer of ownership [3] or confirm ownership in one party as against another.[4] The Louisiana Civil Code determines that a sale has resulted when there is a thing to be sold, a price, and consent. La.C.C. Art. 2439. This article is in no way affected by the Louisiana title registration law.[5] The Louisiana courts consider who paid for the automobile,[6] who insured it,[7] and who possesses it in determining ownership.[8] In a case similar in some respects to the present case on the issue of vehicle ownership with inconsistent title registration, the Fifth Circuit affirmed this court's summary judgment, stating: "Whether Fowler possessed a merchantable or marketable title to the vehicle is certainly not determinative of whether he

3. Flatte v. Nichols, 233 La. 171, 96 So.2d 477, 479.

4. Nettles v. General Accident Fire & Life Assur. Corp., 5 Cir., 234 F.2d 243, 247.

5. Flatte v. Nichols, supra. Failure to register makes the owner unable to deliver a marketable title. However, even this does not deter the Louisiana courts

from vesting ownership in the party who has effected the sale and acquired legal ownership.

6. Lemaire v. Pellerin, La.App., 102 So. 2d 493, 498.

7. Westbrook v. Blakewell, La.App., 126 So.2d 44, 49.

8. Flatte v. Nichols, supra.

was in fact the owner." Nettles v. General Accident Fire and Life Assur. Corp., supra, 234 F.2d at page 247.

### III.

In the present case, the affidavits and documents show that Herzog borrowed money to pay for the car, made the loan payments, insured the car, paid the premiums, and was in possession of the car at all times. Moreover, plaintiffs' affidavits explain Bergeron's inconsistent title registration, an element not present in the cited cases. On the facts presented, a Louisiana court would undoubtedly hold that Herzog, not Bergeron, was the owner of the 1957 Chevrolet.

Defendant's counsel, no doubt aware of the Louisiana jurisprudence, urges that since plaintiffs' proof is largely in affidavit form, he should have the right to cross-examine the affiants on trial. In open court defendant was offered time within which to make discovery and file counter-affidavits and depositions to contradict plaintiffs' affidavits.[9] The offer was rejected and defendant stood on his single affidavit and supporting documents.

### IV.

Affidavits are, of course, the weakest form of evidence.[10] Where, however, the facts sworn to are uncontroverted, they may provide adequate ground for summary judgment.[11] The weakness in affidavits derives from the inability to cross-examine the affiant. This disability may be removed, at least to some extent, through the taking of depositions. Counsel for the defendant was offered that opportunity.[12] It is true that even cross-examination in a deposition would not produce the witness himself before the jury where his demeanor may be physically observed. But if this is deemed a requirement, then there can be no summary judgment in any case where the opponent simply asserts his disbelief of the affidavits or depositions. Certainly something more is necessary to require a trial of an otherwise uncontroverted issue.[13]

The self-interest of the stepson and the widow may require their presence in person before the jury before their testimony can be credited.[14] But here,

9. See F.R.Civ.P. Rule 56(f), 28 U.S.C.A.

10. See Eccles v. Peoples Bank, 333 U.S. 426, 434, 68 S.Ct. 641, 92 L.Ed. 784.

11. F.R.Civ.P. Rule 56(e).

12. See Dyer v. MacDougall, 2 Cir., 201 F.2d 265, 268:
"* * * As the plaintiff has refused to avail himself of the privilege under Rule 56(f) of examining by deposition the witnesses whom the defendants proposed to call at the trial, we must assume that what they said in their affidavits they would have repeated in their depositions; and that what they would have said in their depositions, they would say at a trial, with one possible exception * * *
*   *   *   *   *
"* * * i. e. whether by an examination in open court the plaintiff might extract from the four witnesses admissions which he would not have got on the depositions that he refused. Although this is also at best a tenuous possibility, we need not say that there could never be situations in which it might justify denying summary judgment. It

might appear for example that upon a deposition a witness had been recalcitrant, or crafty, or defiant, or evasive, so that the immediate presence of a judge in a court-room was likely to make him tell more. That would be another matter; and it might be enough. But the plaintiff is in no position to invoke such a possibility for he has refused to try out these witnesses upon deposition, where he might discover whether there was any basis for supposing that awe of a judge was necessary to make them more amenable. *A priori* we will not assume that that is true. The course of procedural reform has all indeed been towards bringing witnesses before the tribunal when it is possible; but that is not so much because more testimony can be got out of them as because only so can the 'demeanor' evidence be brought before the tribunal." (Opinion by Learned Hand.)

13. See Bruce Construction Corp. v. United States etc., 5 Cir., 242 F.2d 873, and cases cited in Note 4 on page 875.

14. Sartor v. Arkansas Gas Corp., 321 U.S. 620, 628, 64 S.Ct. 724, 88 L.Ed. 967.

however, the affidavits, with supporting documents, of three apparently disinterested witnesses confirm what the stepson and the widow say. Perhaps this would be enough but for the fact that title to the 1957 car was registered in the name of defendant's assured and that assured, now deceased, signed the papers predicate to such registration. Under the circumstances, this court hesitates to take this issue of credibility away from the jury, involving as it does not only the veracity of the living witnesses, but that of the deceased assured as well.

Motion for summary judgment denied.