## ECCLES ET AL. *v.* PEOPLES BANK OF LAKEWOOD VILLAGE, CALIFORNIA.

No. 101.   Argued December 9, 1947.—Decided March 15, 1948.

*J. Leonard Townsend* argued the cause for petitioners. With him on the brief were *Solicitor General Perlman, Robert L. Stern* and *George B. Vest.*

*Samuel B. Stewart, Jr.* argued the cause for respondent. With him on the brief was *Luther E. Birdzell.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This is a proceeding under the Declaratory Judgment Act, 48 Stat. 955, 28 U. S. C. § 400. Its aim is to have declared invalid a condition under which the respondent became a member of the Federal Reserve System. The California State Banking Commission authorized the establishment of the respondent provided it obtained federal deposit insurance. This requirement could be met either by direct application to the Federal Deposit Insurance Corporation or through membership in the Federal Reserve System. § 12 B (e) and (f) of the Federal Reserve Act, 48 Stat. 162, 170, 49 Stat. 684, 687, 12 U. S. C. § 264 (e) and (f). Respondent sought such membership but its application was rejected. The promoters of the Bank, having requested the Board of Governors of the Federal Reserve System to reconsider the application for membership, were advised that favorable action depended on a showing that the Transamerica Corporation, a powerful bank holding company, did not have, nor was intended to have, any interest in this Bank. Having been satisfied on this point, the Board of Governors granted membership to respondent subject to conditions of which the fourth is the bone of contention in this litigation.

This condition reads as follows:

"4. If, without prior written approval of the Board of Governors of the Federal Reserve System, Transamerica Corporation or any unit of the Transamerica group, including Bank of America National Trust and Savings Association, or any holding company affiliate or any subsidiary thereof, acquires, directly or indirectly, through the mechanism of extension of loans for the purpose of acquiring bank stock, or in any other manner, any interest in such bank, other than such as may arise out of usual correspondent bank relationships, such bank, within 60 days after

written notice from the Board of Governors of the Federal Reserve System, shall withdraw from membership in the Federal Reserve System."

The Board of Governors gave the respondent this explanation for the condition:

"The application for membership has been approved upon representations that the bank is a bona fide local independent institution and that no holding company group has any interest in the bank at the time of its admission to membership, and that the directors and stockholders of the bank have no plans, commitments or understandings looking toward a change in the status of the bank as a local independent institution. Condition of membership numbered 4 is designed to maintain that status."

Some time later, in 1944, Transamerica, without prior knowledge of the respondent, acquired 540 of the 5,000 shares of its outstanding stock. The Bank duly advised the Board of Governors of this fact, but requested that it be relieved of Condition No. 4. This, the Board of Governors declined to do. Then followed this action, in the United States District Court for the District of Columbia, against the Board of Governors for a declaration that Condition No. 4 was invalid and for an injunction against its enforcement. A motion by the defendants to dismiss the complaint, in that it failed to set forth a justiciable controversy, was denied. 64 F. Supp. 811. The defendants answered, claiming that the Bank's acceptance of membership barred it from questioning the validity of Condition No. 4, and that in any case the condition was valid, and moved for judgment on the pleadings. The Bank, having filed a number of affidavits, moved for summary judgment. The District Court, in an unreported opinion, held that the Bank was bound by the condition on which it had accepted mem-

bership in the Federal Reserve System, and gave judgment for the defendants. The Court of Appeals for the District of Columbia, one judge dissenting, reversed. It rejected the defense of estoppel and sustained the validity of the condition "only as a statement that, if the Board of Governors should determine, after hearing, that Trans-america's ownership of the bank's shares has resulted in a change for the worse in the character of the bank's personnel, in its banking policies, in the safety of its deposits or in any other substantial way, it may require the bank to withdraw from the Federal Reserve System." 161 F. 2d 636, 643–44. Accordingly, it remanded the case to the District Court for entry of a judgment construing Condition No. 4 to such effect. Since this ruling involves a matter of importance to the administration of the Federal Reserve Act, we brought the case here. 332 U. S. 755.

Condition No. 4 provides for withdrawal from membership in the Federal Reserve System, for violation of its provisions, "within 60 days after written notice from the Board of Governors . . . ." Section 9 of the Federal Reserve Act authorizes the Board of Governors to revoke the membership status of a bank "after hearing."[1] If

---

[1] "If at any time it shall appear to the Board of Governors of the Federal Reserve System that a member bank has failed to comply with the provisions of this section or the regulations of the Board of Governors of the Federal Reserve System made pursuant thereto, or has ceased to exercise banking functions without a receiver or liquidating agent having been appointed therefor, it shall be within the power of the board after hearing to require such bank to surrender its stock in the Federal reserve bank and to forfeit all rights and privileges of membership. The Board of Governors of the Federal Reserve System may restore membership upon due proof of compliance with the conditions imposed by this section." 38 Stat. 251, 260, as amended, 46 Stat. 250, 251, 49 Stat. 684, 704, 12 U. S. C. § 327. See also § 5 of the Administrative Procedure Act, 60 Stat. 237, 239, 5 U. S. C. § 1004.

the case contained no more than the foregoing elements, three questions would emerge:

(1) Was this action premature, brought as it was before the Board of Governors commenced revocation proceedings?

(2) If not, could the respondent attack the validity of a condition on the basis of which it had been accepted, and had enjoyed, membership? Compare *Fahey* v. *Mallonee*, 332 U. S. 245, 255.

(3) If so, did the Board of Governors have power to impose the condition as a means of guarding against acquisition by Transamerica of an interest in respondent?

However, with due regard for the considerations that should guide us in rendering a declaratory judgment, the record as a whole requires us to dispose of the case without reaching any of these questions.

Extended correspondence between Marriner S. Eccles, the then Chairman of the Board of Governors of the Federal Reserve System, and A. P. Giannini, Chairman of the Board of Directors of Transamerica, together with the testimony of Eccles before the House Committee on Banking and Currency, set forth the reason for the Board's insistence on the fourth condition. The Board sought to block "acquisition by Transamerica of stock in independent unit banks, especially when it constitutes a means of evading the requirements of the Federal agencies who will not permit its banks to establish additional branches." Hearings before Committee on Banking and Currency, House of Representatives, on H. R. 2634, 78th Cong., 1st Sess., p. 15. The Board was concerned not that Transamerica might purchase some shares of independent banks for the ordinary purposes of investment, but that it would buy into banks in order to acquire control, and thereby turn banks, though outwardly independent, into parts of its own banking network. The Board of Governors was therefore carrying out the policy underlying Con-

dition No. 4 when it formally disavowed any intention to invoke that condition against respondent merely because of acquisition by Transamerica of an interest in the Bank, with no indication of subversion of its independence.[2] This action by the Board was taken after it had satisfied itself that Transamerica's holding did not affect the Bank's control. The Bank had vigorously insisted on its continued independence, in urging upon the Board the harmlessness of Transamerica's ownership of some of the Bank's stock, and the Board, upon independent investigation found such to be the fact. Accordingly, the Board concluded that "the public interest" called for no action.

A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest. *Brillhart* v. *Excess Insurance Co.,* 316 U. S. 491; *Great Lakes Dredge & Dock Co.* v. *Huffman,* 319 U. S. 293, 297–98; H. R. Rep. No. 1264, 73rd Cong., 2d Sess., p. 2; Borchard, Declaratory Judgments (2d ed. 1941) pp. 312–14. It is always the duty of a court of equity to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief. Especially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative.

---

[2] The following is an extract from the minutes of a meeting of the Board on January 28, 1946:

"Upon consideration of the latest report of examination of the Peoples Bank, Lakewood Village, California, from which the Board concluded that there had been no substantial change in the control, management or policy of the bank resulting from the acquisition by Transamerica Corporation of certain shares of the bank's stock, the Board, by unanimous vote, decided that there was no present need in the public interest for any action by the Board with respect to the condition of membership of the bank relating to acquisition of its stock by Transamerica Corporation."

The actuality of the plaintiff's need for a declaration of his rights is therefore of decisive importance. And so we turn to the facts of the case at bar. The Bank has always insisted that it is independent of Transamerica; the Board of Governors has sustained the claim. The Bank stands on its right to remain in the Federal Reserve System; the Board acknowledges that right. The Bank disclaims any intention to give up its independence; the Board of Governors, having imposed the condition to safeguard this independence, disavows any action to terminate the Bank's membership, so long as the Bank maintains the independence on which it insists. What the Bank really fears, and for which it now seeks relief, is that under changed conditions, at some future time, it may be required to withdraw from membership, and if this happens, so the argument runs, the Comptroller of the Currency, one of the Directors of the Federal Deposit Insurance Corporation, has agreed with the Federal Reserve Board to refuse any application by the Bank for deposit insurance as a non-member.

Thus the Bank seeks a declaration of its rights *if* it should lose its independence, or *if* the Board of Governors should reverse its policy and seek to invoke the condition even though the Bank remains independent and *if* then the Directors of the Federal Deposit Insurance Corporation should not change their policy not to grant deposit insurance to the Bank as a non-member of the Federal Reserve System. The concurrence of these contingent events, necessary for injury to be realized, is too speculative to warrant anticipatory judicial determinations. Courts should avoid passing on questions of public law even short of constitutionality that are not immediately pressing. Many of the same reasons are present which impel them to abstain from adjudicating constitutional claims against a statute before it effectively and presently impinges on such claims.

It appears that the respondent could, if it wished, protect itself from the loss of its independence through adoption of by-laws forbidding any further sale or pledge of its shares to Transamerica or its affiliates. See California Corporations Code, L. 1947, c. 1038, § 501 (g).[3] To this the Bank replies that even if its independence is maintained, the Board of Governors may change its policy, and seek enforcement of Condition No. 4, whether or not such enforcement is required by "the public interest" in having independent banks, which the condition now serves. Such an argument reveals the hypothetical character of the injury on the existence of which a jurisdiction rooted in discretion is to be exercised. In the light of all this, the difficulties deduced from the present uncertainty regarding the future enforcement of the condition, possibly leading to uninsured deposits, are too tenuous to call for adjudication of important issues of public law.[4] We are asked to contemplate as a serious danger that a body entrusted with some of the most delicate and grave responsibilities in our Government will change a deliberately formulated policy after urging it on this Court against the Bank's standing to ask for relief.

---

[3] "501. The by-laws of a corporation may make provisions not in conflict with law or its articles for:

.        .        .        .        .

"(g) Special qualifications of persons who may be shareholders, and reasonable restrictions upon the right to transfer or hypothecate shares."

Likewise, the shareholders, or such of them as chose to, could presumably bind themselves not to sell or pledge to Transamerica, and by noting this agreement on their certificates could bind their transferees. Cf. *Vannucci* v. *Pedrini*, 217 Cal. 138, 17 P. 2d 706.

[4] The bank asserted, in its affidavits, not that lack of confidence had deterred depositors, but that deposits had been so heavy that capital expansion was in order, but might be disadvantaged by fear of prospective investors to risk personal assessment if deposits were uninsured.

A determination of administrative authority may of course be made at the behest of one so immediately and truly injured by a regulation claimed to be invalid, that his need is sufficiently compelling to justify judicial intervention even before the completion of the administrative process. But, as we have seen, the Bank's grievance here is too remote and insubstantial, too speculative in nature, to justify an injunction against the Board of Governors, and therefore equally inappropriate for a declaration of rights. This is especially true in view of the type of proof offered by the Bank. Its claims of injury were supported entirely by affidavits. Judgment on issues of public moment based on such evidence, not subject to probing by judge and opposing counsel, is apt to be treacherous. Caution is appropriate against the subtle tendency to decide public issues free from the safeguards of critical scrutiny of the facts, through use of a declaratory summary judgment. Modern equity practice has tended away from a procedure based on affidavits and interrogatories, because of its proven insufficiencies. Equity Rule 46 forbade such practice save in exceptional cases. See *Los Angeles Brush Mfg. Corp.* v. *James,* 272 U. S. 701; cf. Federal Rule of Civil Procedure 43 (a). Again, not the least of the evils that led to the Norris-LaGuardia Act was the frequent practice of issuing labor injunctions upon the basis of affidavits rather than after oral proof presented in open court. See Amidon, J., in *Great Northern R. Co.* v. *Brosseau,* 286 F. 414, 416; Swan, J., in *Aeolian Co.* v. *Fischer,* 29 F. 2d 679, 681–82.

Where administrative intention is expressed but has not yet come to fruition (*Ashwander* v. *Tennessee Valley Authority,* 297 U. S. 288, 324), or where that intention is unknown (*Great Atlantic & Pacific Tea Co.* v. *Grosjean,* 301 U. S. 412, 429–30), we have held that the controversy is not yet ripe for equitable intervention. Surely, when

a body such as the Federal Reserve Board has not only not asserted a challenged power but has expressly disclaimed its intention to go beyond the legitimate "public interest" confided to it, a court should stay its hand.

*Judgment reversed.*

THE CHIEF JUSTICE and MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

MR. JUSTICE REED, with whom MR. JUSTICE BURTON joins, dissenting.

In order to get admission into the Federal Reserve System, the respondent was required to put into its charter a provision which was allegedly beyond the power of the Board of Governors of the System to require. It seems obvious that the requirement was a restriction on the market for the respondent's stock and therefore detrimental to the conduct of its business, a continuing threat of the Board to exclude respondent from the benefits of the System.

Respondent desired to be free of what it regarded as an illegal requirement. The Board of Governors has not agreed that it will never enforce the prohibition but holds it as a threat to force the respondent to resign from the System upon acquisition of control by those deemed undesirable by the Board.

Certainly, as I see it, there is not only the possibility of future injury but a present injury by reason of the threat to the marketability of respondent's stock. It may have a substantial bearing upon the willingness of customers to establish banking relations with it, especially major relationships looking toward long and close associations of interests. It requires no elaboration to convince me that the threat is a real and substantial interference by allegedly illegal governmental action. As that

threat has taken a definite form by the enforced agreement for withdrawal, we have not something that may happen but a concrete written notice requiring withdrawal by this respondent from the System on the happening of a fact which is contrary to the Board's idea of the public interest. Whether the Board's idea of a legitimate public interest is correct is the very point at issue.

In such circumstances there is a justiciable controversy, the claim of a right and a present threat to deprive a particular person of the right claimed. The damage from its actual or threatened enforcement is, of course, irremediable. Any bank would be seriously injured by even an effort to oust it from the System. This gives jurisdiction under the Declaratory Judgment Act. Judicial Code § 274d.

This Court has discretion to refuse to consider a petition for a declaratory judgment and an injunction to stop a threatened or existing injury. *Federation of Labor* v. *McAdory,* 325 U. S. 450, 461. That discretion is not unfettered. *Altvater* v. *Freeman,* 319 U. S. 359, 363. There is no difference between declaratory suits involving an equitable remedy and other equity suits. Where an actual controversy with federal jurisdiction exists over the legal relations of adverse parties, discretion usually cannot properly be exercised by refusing an adjudication. *Meredith* v. *Winter Haven,* 320 U. S. 228; cf. *Bell* v. *Hood,* 327 U. S. 678. Unusual circumstances, not here present, such as other pending suits, *Brillhart* v. *Excess Insurance Co.,* 316 U. S. 491, or supersession of state authority, *Great Lakes Dredge & Dock Co.* v. *Huffman,* 319 U. S. 293, sometimes justify refusal of relief.

Under the facts of this case, however, it seems improper to refuse an adjudication at this time. If governmental power is being unlawfully used to constrain respondent's operation of its business, respondent is entitled to pro-

tection, now. See *Columbia Broadcasting System* v. *United States,* 316 U. S. 407, a case where prematurity was clearer than here.

I would decide this case on the merits.