Frank PALMISANO and Anthony S. Dontino, Plaintiffs,

v.

UNITED STATES of America, R. H. Reichel, District Director of Internal Revenue, George Fitzgerald, Special Agent, Internal Revenue Service and Honorable Justin J. Mahoney, United States Attorney, Northern District of New York, Defendants.

Civ. No. 9143.

United States District Court
N. D. New York.

Dec. 30, 1963.

Williams & Ray, Utica, N. Y., Kenneth P. Ray, Utica, N. Y., of counsel, for plaintiffs.

Justin J. Mahoney, U. S. Atty., Albany, N. Y., George B. Burke, Asst. U. S. Atty., of counsel, for defendants.

BRENNAN, District Judge.

This pre-indictment proceeding has taken the form of a declaratory judgment action in which plaintiffs seek to suppress documentary evidence consisting of books and records obtained from plaintiffs in the course of an investigation by agents of the Internal Revenue Bureau. An injunction is sought prohibiting the use of such evidence either before a grand jury or upon the trial of any indictment involving the plaintiffs.

On June 14, 1963 this court denied defendants' motion to dismiss the complaint and directed that the action proceed to trial. A five page decision was filed and reference to same is made as a background for the present status of the proceeding and for the determination made below.

■ This court held in the above decision that it had jurisdiction to entertain the action upon the theory that it possessed inherent disciplinary power over its officers. Decisions, so holding, were cited including that of Balistrieri v. United States, 7 Cir., 303 F.2d 617 which expressed some doubt as to the jurisdictional problem. After indicating that practical considerations require that pre-indictment proceeding should be sanctioned only in rare instances and that the sufficiency of the complaint was questionable, the court held that it would be more practical to direct the trial of the action. The trial has now been held and the evidence has been taken and the issues are before the court for decision.

Before discussing the evidence upon which the findings must be based, sufficient reference to reported decisions will be made which create a measure of uncertainty in the mind of the court as to whether or not jurisdiction, if it exists, should have been declined.

The plaintiffs are businessmen. No arrest has been made; no complaint filed and no indictment found. The complaint contains an allegation upon information and belief that the books and records involved or items of information obtained therefrom have been transmitted to the United States Attorney with the recommendation that the matters involved be submitted to a Federal Grand Jury for its consideration. The action is equitable in its nature and seems to be based upon words and actions of government

agents which are alleged to be violative of the Fourth and Fifth Amendments.

It is generally agreed that interference with criminal proceedings at the preindictment stage should be rarely allowed. A civil action, therefore with its attendant delay in trial and in civil pretrial proceedings is a potential instrument for delay which is destructive of the prompt disposition of criminal charges. The well considered opinion in Rodgers v. United States, D.C., 158 F.Supp. 670 seems to authorize the court to decline jurisdiction under such circumstances. See also Toscano v. Olesen, D.C., 184 F.Supp. 296; Eastus v. Bradshaw, 5 Cir., 94 F.2d 788; Eccles v. Peoples Bank, 333 U.S. 426, at 431, 68 S.Ct. 641, at 644, 92 L.Ed. 784; dissenting opinion in Austin v. United States, 4 Cir., 297 F.2d 356, at 364 and cases cited. On the other hand an inference that such an action is maintainable prior to indictment is found in Lapides v. United States, 2 Cir., 215 F.2d 253 and Grant v. United States, 2 Cir., 282 F.2d 165. The decision in DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614, is primarily concerned with appellate jurisdiction but it seems to equate an independent action before indictment with a motion under Rule 41, F.R.Crim.P. as far as finality is involved either in the trial court or for purposes of appeal. The above reference is made to indicate the desirability of authoritative guidance in the expanding area of preindictment proceedings.

Whether or not jurisdiction should have been declined or whether the action should be considered as a motion under Rule 41(e), F.R.Crim.P., a trial having been held, it would seem more practical at this point in the proceeding to decide the merits.

The essential facts are not seriously disputed. The plaintiffs are mature men engaged at the pertinent times as partners in the conduct of a restaurant at Utica, New York. Dontino was not acquainted with the details of the operation of the business which was under the personal supervision of Palmisano. Dontino took no significant part in either the conferences or events referred to below. On July 11, 1960, two special agents of Internal Revenue Service called at the home of Palmisano. They were met by Palmisano's wife. The agents expressed a desire to see her husband and upon her inquiry, they advised that there was "nothing wrong". After a short interval, Palmisano appeared. The agents introduced themselves as special agents, showed their identification and made inquiry as to tax returns. Palmisano testifies and the agents, or one of them, stated in effect that their activity was "a routine check". The agents have no recollection of the use of the above language either to Palmisano or the accountant, referred to below. Palmisano advised that one Graziano, an accountant, had the books of the restaurant and told the agents to see him with reference thereto. Then followed several conferences with the accountant at which the 1957, 1958 and 1959 partnership cabaret tax returns or the lack of them were discussed. The agents requested that the accountant produce pertinent records and books. The first of such conferences occurred on July 12, 1960 at the Revenue Office and it is to be noted that a considerable number of the documents were delivered to the agent on that day. The accountant testifies that one of the agents advised that he was engaged in a routine check and if the desired documents were not produced, they would be obtained by subpoena. The accountant took the matter up with Palmisano and advised him to produce the records of the business as requested by the agent. On five occasions, during the period between July 12, 1960 and May 4, 1961, the disputed documents were delivered to the agents and receipts therefor taken. This evidence is not contradicted except that the agent has no recollection of the discussion relative to a subpoena.

Under date of April 20, 1961, the plaintiffs were advised by individual letter, signed by Leo G. Smith, Chief Intelli-

gence Division, that "consideration is being given to a possible recommendation that criminal proceedings be instituted against you" and that a formal interview was set for May 1, 1961 at Syracuse at which the plaintiffs could appear with counsel and submit pertinent facts or evidence. Plaintiffs and the accountant attended the conference, the details of which as disclosed on the trial, are not important here. More of the involved documents were delivered by the accountant to the agent on May 4, 1961 about two weeks after the date of the letter and three days after the conference. Palmisano seeks to avoid knowledge of the contents of the letter of April 20, 1961 by testifying that although he remembers receiving the letter he did not read it.

At no time did the agents advise the plaintiffs as to their right to counsel, to refuse to answer questions or to produce records which might tend to incriminate them. The fact that the duties of a special agent is ordinarily limited to investigation of matters having criminal overtones and that such was the nature of the investigation here was not explained to either plaintiffs or the accountant.

All of the above, together with the concession by the Assistant U. S. Attorney that consideration is being given to the presentation of evidence concerning plaintiffs' tax liability affords the basis of plaintiffs' contention that the turning over of the records by the accountant was not their voluntary act but was occasioned by the deliberate deceitful and misleading acts of the agents intentionally designed to deprive the plaintiffs of their constitutional rights.

It is held in many decisions that an agent of the Internal Revenue Service is not required to warn a person that documents voluntarily given may be used against him in a subsequent criminal proceeding. Greene v. United States, 2 Cir., 296 F.2d 841; Turner v. United States, 4 Cir., 222 F.2d 926.

As in Grant v. United States, 2 Cir., 291 F.2d 227, at 229 "The disclosures here were apparently quite willing, although possibly in ignorance of rights". There remains only the question as to whether the plaintiffs have established fraud or deceit which was an impelling factor in the disclosures. We hardly need go beyond the decisions in Turner v. United States, 4 Cir., 222 F.2d 926 and United States v. Sclafani, 2 Cir., 265 F.2d 408 to conclude that plaintiffs have not met the burden imposed even if we adopt the plaintiffs' version of the agents' statements. United States v. Sclafani holds that knowledge of a "routine check" is in itself a warning that the investigation may disclose acts or omissions which may be classed as criminal. Here the plaintiffs were in no way assured "that no proceedings can or even will eventuate". Even if reference was made by the agent to the subpoena power, deceit or coercion is not thereby established. Grant v. United States, 2 Cir., 291 F.2d 227. In fact, it was urged in Greene v. United States, supra, that such power should have been used rather than to make a request for the disputed documents. The Greene decision involved the acts of a special agent who, like the agents here, had as a principal duty the investigation of matters which may involve criminal activities. Plaintiffs attempt to distinguish the obligation of such agents from that imposed upon a special agent who enters the investigation during the course thereof is not supported by judicial precedent. Plaintiffs in no way explain their action in delivering documents to the agents after the express warning given in the letter of April 20, 1961. This is a circumstance which tends to show that even at that late date, plaintiffs were voluntarily cooperating with the agent, undoubtedly with the hope that the investigation would be closed without serious consequences.

The ultimate finding here is that plaintiffs have failed to establish that the book, records and documents involved

566

were obtained by fraud or deceit of the agents or that they were involuntarily obtained from the plaintiffs in violation of their rights.

It is concluded that the complaint should be and is dismissed, and it is

So ordered.