**LUMBERMENS MUTUAL CASUALTY COMPANY, an Illinois Corporation, Plaintiff,**

v.

**Henry QUICK, Jr., as Ancillary Administrator of the Estate of Johnny Lee Quick, Deceased, Defendant.**

**Civ. A. No. 66-123.**

United States District Court
D. South Carolina,
Florence Division.

Aug. 6, 1966.

ment on February 17, 1966 and filed motion with the court to issue its order restraining and enjoining the defendant, his agents, and servants from further proceedings in a wrongful death action in the South Carolina Court of Common Pleas in which the defendant in this action is plaintiff as administrator of the deceased. The basis for Lumbermens' motion is stated to be "that it is necessary that said matters [as in the complaint] be adjudicated, and that same will be determinative of the rights of the parties under the contract of insurance issued by the plaintiff described in the complaint in this action."

It appears that on June 26, 1965, in Marlboro County, South Carolina, Johnny Lee Quick, then age 20, was mortally wounded while riding in an automobile owned by one Buddy P. Gray when the Gray automobile was run into by the automobile of James Luther Quick. There is no relation between Johnny Lee Quick, who was white, and James Luther Quick, who is Negro. On December 11, 1965, Henry Quick, Jr., as Ancillary Administrator of the estate of Johnny Lee Quick, brought suit against James Luther Quick in the Court of Common Pleas for wrongful death, asking damages in the amount of $100,000.00. The administrator, realizing that the defendant in the wrongful death action was uninsured, served Lumbermens as insurer of the deceased Johnny Lee Quick through the South Carolina Insurance Commissioner. Lumbermens then notified the administrator and counsel that strict compliance with the insuring agreement would be required. The claim that Lumbermens insured the deceased is based on the contention that the deceased was insured as a resident of the household of Lumbermens named insured, John Dougherty, Jr., with whom the deceased allegedly lived in Baltimore.

No answer was filed in the wrongful death action. On December 30, 1965 Lumbermens asked for twenty days extension of time in which to answer.[1] No

A. L. Hardee, of Willcox, Hardee, Houck, Palmer & O'Farrell, Florence, S. C., for plaintiff.

Eugene Huggins, Bennettsville, S. C., for defendant.

HEMPHILL, District Judge.

Lumbermens Mutual Casualty Company filed suit for a declaratory judg-

---

1. South Carolina Rules of Pleadings require an answer within 20 days, but extensions may be granted within the discretion of the attorneys.

further steps were taken until February 17, 1966 when Lumbermens filed complaint for declaratory judgment against the administrator and moved for an injunction of the wrongful death action pendente lite. At the time of the hearing before this court no answer had been filed and the court secured agreement that no answer would be required until ten days after this order (disposing of the request for injunction) had been filed.

■ The United States District Court, a court of limited jurisdiction conferred by statute, does under certain conditions and circumstances have the power to enjoin proceedings in the State courts. Lumbermens advances in their brief 28 U.S.C.A. § 2283 as a grant of that power. The statute provides that "a court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The implication being, apparently, that it will be necessary to enjoin the State proceedings to protect or effectuate the declaratory judgment which they seek. This court does not agree.

■ In Aetna Cas. & Sur. Co. v. Yeatts, 99 F.2d 665 (4th Cir. 1938), an appeal was taken from a refusal to enjoin the State court proceedings. In affirming the decision Judge Soper followed the principles set forth in Kline v. Burke Const. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922), saying there was no basis for the issuance of an injunction "where the actions in both cases are in personam and the jurisdiction in one is not affected by the other." In that situation, it was said, "the rank and authority of both courts are equal and each may proceed without interference from the other * * * A federal court possesses no power to interfere with a proceeding in a state tribunal when there is no interference with the subject matter in the possession of the federal court and no impairment of its jurisdiction. * * * In short, each court may proceed with the case before it without reference to the other, except insofar as a prior decision in one tribunal may constitute res adjudicata on one or more questions involved in a subsequent trial in the other." 99 F.2d at 670. The authority of *Kline*, applied by Judge Soper to a situation very similar to the present one, is deemed controlling here and the motion to enjoin is denied.

■ The Barron and Holtzoff treatise[2] has distilled from the cases under this statutory remedy the general proposition that "the granting of a declaratory judgment rests in the sound discretion of the trial court exercised in the public interest."[3] The duty of the court is said to be one of striking a proper balance between the needs of the plaintiff and the consequences of giving the desired relief.[4] Although the discretion of the trial court to refuse to entertain an action for declaratory judgment has been recognized by the Supreme Court[5] it is not an unlimited absolute discretion but one limited to judicially sound considerations and it is reviewable on appeal.[6] Of the approved reasons (which presumably are not exclusive) inducing a court to deny relief are: (1) that the judgment would not settle the controversy between the parties, (2) inconvenience and burden to distant litigants, (3) inequitable conduct on the part of the plaintiff, and (4) to prevent the federal courts from being used for procedural fencing

2. 3 Barron & Holtzoff, Federal Practice & Procedure § 1265 (1958).

3. Id. quoting from Eccles v. Peoples Bank of Lakewood, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948).

4. Eccles v. Peoples Bank of Lakewood, 333 U.S. 426, 431, 68 S.Ct. 641 (1948).

5. E. g. Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).

6. 3 Barron & Holtzoff, Federal Practice & Procedure § 1265 (1958) and cases cited at 298 n. 55.

or in a race for res judicata.[7] The availability of another adequate remedy—as for instance here where an indemnity suit could be brought after judgment in the wrongful death action—is not such a consideration as would preclude declaratory relief,[8] yet Professor Wright in his work on Federal Courts notes the dearth of law on the effect the availability of a state declaratory judgment remedy has on the judicial discretion to refuse the action in the federal court.[9]

There is some consternation in this instance whether the suit for a declaration of rights is appropriately before this court. The ancillary administrator of the deceased was appointed and qualified in the Probate Court for Marlboro County, South Carolina and is capable of representing the deceased fully. The original action in tort was brought there. In that suit there was lacking diversity of citizenship of parties which is required for federal jurisdiction,[10] hence the suit could not have originally been brought in this court nor is it removable into this court.[11] The only possible entrée into the federal courts for Lumbermens is by the method of filing a declaratory judgment action against the ancillary administrator in the district court by dint of diversity of citizenship. There is no explanation given as to why the declaratory judgment is sought— with a request that an injunction issue from a federal court to stay an action in a State court—rather than utilize the equally available and equally efficacious declaratory judgments[12] procedure in the same Court of Common Pleas of South Carolina which has jurisdiction of the wrongful death action.

The pattern is familiar and the problem an old one. In the usual case the insurer simply wants to know whether there is coverage as it affects their obligation to put up a defense for the insured. In this instance, however, under the uninsured motorists provision the insurer is in the position of opposing his own

7. See 3 Barron & Holtzoff, Federal Practice & Procedure § 1266 and cases cited nn. 56 and 57 (1958); See also Wright, Federal Courts § 100 (1962).

8. Fed.R.Civ.Proc. 57; 3 Barron & Holtzoff, Federal Practice & Procedure § 1266 (1958).

9. Wright, Federal Courts § 100 at 393 (1963).

10. 28 U.S.C.A. § 1332(a) (Supp.1965).

11. See 28 U.S.C.A. § 1441 (1950).

12. S.C.Code Ann. § 10–2002 (1962): Courts of record may declare rights, status and other legal relations.—Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect. Such declarations shall have the force and effect of a final judgment or decree. See also S.C.Code Ann. § 10–2004 (1962): A contract may be construed either before or after there has been a breach thereof.

The availability of injunctive relief in the state courts is ample and effective as is codified, S.C.Code Ann. § 10–2051 (1962): By whom order of injunction may be made.—An order of injunction may be made by the court of common pleas in which an action is brought or by a judge thereof, and, in the absence from the circuit or inability to act from any cause of a judge thereof, by a judge of any other circuit or a justice of the Supreme Court. See also S.C.Code Ann. § 10–2055 (1962): Conditions under which temporary injunction granted.—When it shall appear: (1) By the complaint, that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of some act the commission or continuance of which, during the litigation, would produce injury to the plaintiff; (2) During the litigation, that the defendant is doing, threatens or is about to do, procure or suffer some act to be done in violation of the plaintiff's rights respecting the subject of the action and tending to render the judgment ineffectual; or (3) By affidavit during the pendency of an action, that the defendant threatens or is about to remove or dispose of his property, with intent to defraud his creditors; A temporary injunction may be granted to restrain such act or such removal or disposition.

in the ex delicto action. There is no question of providing his defense. The insurer may if they so choose defend the uninsured motorist against their insured.[13] The ninth circuit framed the purpose of the declaratory judgment act as being:[14]

> To afford an added remedy to one who is uncertain of his rights and who desires an early adjudication thereof without having to wait until his adversary should decide to bring suit, and to act at his peril in the interim.

With no obligation to provide a defense (and incur the expense) the insurer will in no way be discommoded if the resolution of coverage is deferred until the ex delicto action is decided and their insured, should he have a favorable judgment, proceeds against the insurer for indemnity or in some other fashion.

There is nothing in the record, nor has there been anything called to the attention of the court, which would indicate that there is anything disadvantageous to the parties, counsel, or the court in pursuing these matters in the state court. The extent of the interdependency of these two actions need not be belabored. The fact is that there does exist a relation between the two suits and that there is a court of competent jurisdiction to handle both suits and all questions. Rather than being drawn to the clean simplicity of that situation the plaintiff would come to the district court under diversity jurisdiction, and, under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), ask the district court to do as the state court would have done. Though no factual situation clearly parallels this one the cases indicate that the dominant consid-

erations are the fulfilling of the parties need and expedition and economy of disposition. In Maryland Cas. Co. v. Boyle Const. Co.[15] and Aetna Cas. & Sur. Co. v. Quarles[16] the fourth circuit quoted Borchard [17] with approval:

> The court will refuse a declaration where another court has jurisdiction of the issue, where a proceeding involving identical issues is already pending in another tribunal, where a special statutory remedy has been provided, or *where another remedy will be more effective or appropriate under* the circumstances. In these cases it is neither necessary nor proper to issue the declaration. (Emphasis added.)

How is it expeditious or economical for the district court to sit in substitution for the courts of South Carolina under the Erie Doctrine when there are no factors which would in any way hinder these parties from hearing what South Carolina would say for herself? The able and erudite bench of South Carolina is the true wellspring for interpretations of the law of the State. In the unlikely event the plaintiff is unable to obtain relief under the laws of South Carolina by the courts of South Carolina then this court would be constrained to weigh the considerations in an entirely different light. The present prospect is oppressive and tortuous. "The wholesome purposes of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum." [18] Therefore the court dismisses the action for declaratory judgment without prejudice. Should the plaintiff find inequities in the remedies remaining to him the court will be avail-

13. S.C.Code Ann. § 46–750.33 (1965 Cum. Supp.) ("The insurance carrier shall have the right to appear and defend in the name of the uninsured motorist in any action which may affect its liability"); Sheffield v. American Indemnity Company, 245 S.C. 389, 140 S.E.2d 787 (1965).

14. Shell Oil Co. v. Frusetta, 290 F.2d 689, 692 (9th Cir. 1961) citing Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321 (4th Cir. 1937).

15. 123 F.2d 558, 565 (4th Cir. 1941).

16. 92 F.2d 321, 325 (4th Cir. 1937).

17. Borchard, Declaratory Judgments 107–109.

18. American Automobile Ins. Co. v. Freundt, 103 F.2d 613, 617 (7th Cir. 1939); See Shell Oil Co. v. Frusetta, 290 F.2d 869 at 894 (9th Cir. 1961).

able to receive a complaint based on changed circumstances.

Motion for injunction denied.

Declaratory judgment denied.

And it is so ordered.