**Bruce O. BOWERS, Plaintiff,**

v.

**WACKER SILICONE CORP., nka Wacker Chemical Corp., Defendant.**

**Case No. 5:06CV03025.**

United States District Court, N.D. Ohio, Eastern Division.

Jan. 17, 2008.

Christopher John Carney, Brouse McDowell, Cleveland, OH, Nicholas P. Capotosto, Brouse McDowell, Akron, OH, for Plaintiff.

David W. Wicklund, Michael J. Podolsky, Shumaker, Loop & Kendrick, Toledo, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER

SARA LIOI, District Judge.

This matter is before the Court on cross-motions for summary judgment. Plaintiff Bruce Bowers ("Plaintiff" or "Bowers") filed a motion for summary judgment (Doc. No. 18) on his complaint for declaratory judgment against Defendant Wacker Silicone Corporation ("Defendant" or "Wacker"). Wacker filed a cross-motion for partial summary judgment (Doc. No. 23), seeking a determination that Bowers is not entitled to the relief he seeks.

## I. Statement of Facts and Procedural History

Bowers is an individual resident of Akron, Ohio. (Compl. ¶ 1.) Defendant is a Delaware corporation with its principal place of business in Adrian, Michigan. (Compl. ¶ 2.) On December 3, 2001, Wacker entered into an Asset Purchase Agreement ("APA") with Bowers and his company, SilMix Incorporated ("SilMix"), whereby Wacker purchased substantially all the assets of SilMix. (Compl. ¶ 6.) At the same time, Bowers and Wacker executed a separate agreement whereby Wacker purchased the "goodwill" of the SilMix business. (Counterclaim, ¶ 3—admitted.) SilMix was in the business of manufacturing custom silicone rubber compounds. (Bowers Aff. ¶ 3.) In connection with the APA, Wacker, Bowers, and SilMix entered into a noncompetition agreement (the "Noncompetition Agreement"). (Compl. ¶ 7.) The terms of the Noncompetition Agreement remain in effect until March 30, 2010. (Compl. ¶ 9.)

Pursuant to paragraph two of the Noncompetition Agreement, Bowers and SilMix agreed not to:

> directly or indirectly (i) carry on or become involved (directly or indirectly, as employee, owner, director, agent or consultant to) with any business which is competitive in any way with the Business (as conducted on the date hereof) within the Territory; [ . . . ](ii) canvass, solicit, or accept any business for any person engaged in the business from any customer of any member of [Wacker]; (iii) induce or attempt to induce any other person or entity to canvass, solicit, or accept any business for any person or entity engaged in the Business from any customer of any member of [Wacker]; (iv) request or advise any customers or any member of [Wacker] to withdraw, curtail, or cancel their business relating to the Business with such member; (v) disclose to any other person or entity engaged in the Business (or intending to be engaged in the Business) the names of past, present, or future (if known), customers of any member of [Wacker] relating to the Business; (vi) induce or attempt to influence, any employee of any member of [Wacker] to terminate his or her employment with such member relating to the Business; or (vii) disclose or make use of any Proprietary Information regarding [Wacker] as it relates to the Business unless required to do so by a court of law.

(Bowers Aff., Ex. A, ¶ 2.) The Noncompetition Agreement defines the "Business" as the "design, development, manufacture,

compounding, and/or sale of heat curable silicone rubber products, RTV products and materials." (Bowers Aff., Ex. A, at 1.)

Following the execution of the APA, Bowers worked as a consultant for Wacker as President of the newly-added SilMix division. Bowers remained with Wacker as a consultant until March 30, 2005. After leaving Wacker, Bowers became a member of CT Extrusions, LLC ("CT"). (Compl. ¶ 10.) CT engages in the manufacture, sale, and distribution of extruded silicone products, including a silicone rubber sponge sheet with tape. (*Id.*) Based upon the terms of the Noncompetition Agreement, CT is bound by the agreement to the same extent as Bowers due to Bowers's status as a member of CT. CT's product—the silicone rubber sponge sheet with tape—is a finished product. It is produced by extruding the necessary silicone rubber compounds. The silicon rubber compound is essentially the raw material that is used to make the finished product. Wacker's business, as defined in the Noncompetition Agreement, is the manufacture, compounding and/or sale of silicone rubber products, including the silicone rubber compound used by CT to manufacture its finished product. (Bowers Aff. ¶ 8 & Ex. A, at 1.)

CT manufactures the silicone rubber sponge with tape for sale to one of its customers, ESP. (Bowers Aff. ¶ 7.) Beginning in approximately February 2006, CT began purchasing the compounds necessary to manufacture this product from Wacker.[1] Wacker did not object to this arrangement. Sometime thereafter, CT stopped purchasing its compounds from Wacker and began manufacturing the silicone rubber compounds internally. (Bowers Aff. ¶ 10.) Bowers offers an explanation for why this occurred,[2] but admits that, in fact, CT was and is manufacturing custom silicone rubber compounds for use in producing the silicone rubber sponge with tape that it sells to ESP. (Bowers Aff. ¶¶ 9–10.) Due to this internal production by CT, Wacker no longer sells the compounds formerly sold to CT in connection with the production of the silicone rubber sponge with tape. (Bowers Aff. ¶¶ 8–10.)

Wacker informed Bowers of its belief that, by manufacturing its own silicone rubber compound, Bowers was in violation of the Noncompetition Agreement. (Compl. ¶ 16.) Wacker also interprets the Noncompetition Agreement to prohibit Bowers (and CT) not only from manufacturing compounds internally, but also from purchasing such compounds from any supplier other than Wacker.

Based on Wacker's position that he was in violation of the Noncompetition Agreement, Bowers instituted this action for declaratory judgment in Summit County Court of Common Pleas. (Doc. No. 1, Attachment 1.) On December 20, 2006, Wacker removed the action to federal court, invoking this Court's diversity jurisdiction. (Doc. No. 1.) Upon removal, Wacker filed an answer to the complaint and a counterclaim. (Doc. No. 2.) In its counterclaim, Wacker asserts a claim for breach of contract based on the alleged violation of the Noncompetition Agreement by Bowers, and seeks damages as a result of the alleged breach. Wacker also con-

1. There is some question regarding whether the compounds were purchased directly by CT or instead by ESP, which then may have ordered that the compounds be shipped directly to CT. (Def.'s Reply at 2.) The answer to this question is immaterial to the disposition of this action.

2. The parties apparently dispute whether Wacker was approached about reformulating the compound before CT began producing it internally. *Compare* Bowers Aff. ¶ 9 *with* Def.'s Br. Summ. J. at 6. Bowers admits that CT in fact produces compounds internally. (Bowers Aff. ¶ 10.) It makes no difference why the decision to do so was made.

tends it is entitled to a preliminary and permanent injunction preventing Bowers from competing with it as provided for by the Noncompetition Agreement. Bowers filed an answer to the counterclaim. (Doc. No. 4.)

On August 17, 2007, Plaintiff filed a motion for summary judgment seeking a declaration that he is not violating the Noncompetition Agreement. (Doc. No. 18.) On September 24, 2007, Wacker filed a cross-motion for partial summary judgment combined with its opposition to Plaintiff's motion. (Doc. No. 23.) Wacker seeks a determination that Bowers is in violation of the Noncompetition Agreement. Wacker has not sought summary judgment as to its counterclaims. Both parties filed replies. (Doc. Nos. 25, 26.) This matter is now ripe for decision.

## II. Law and Analysis

### A. Standard of Review

Fed.R.Civ.P. 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law [ . . . ].

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein [ . . . ]. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported

as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n.,* 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will

bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989), citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir.1988). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

## B. Declaratory Judgment

The Court has authority to grant declaratory relief pursuant to Fed.R.Civ.P. 57 and 28 U.S.C. § 2201. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides:

> In a case of actual controversy within its jurisdiction, [ . . . ] any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

■ "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village, Cal.,* 333 U.S. 426, 433, 68 S.Ct. 641, 92 L.Ed. 784 (1948). A "controversy" justifying declaratory relief must be "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts."

*Ashwander v. Tenn. Valley Auth.,* 297 U.S. 288, 325, 56 S.Ct. 466, 80 L.Ed. 688 (1936).

■ In determining whether to consider a claim for declaratory judgment, courts should consider (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.,* 746 F.2d 323, 326 (6th Cir.1984).

Neither party disputes that declaratory judgment is appropriate in this case. The Court finds that, under the *Grand Trunk* factors, issuance of declaratory relief in this matter will be extremely useful in clarifying the legal relationship between the parties and will be useful in resolving the controversy, and therefore is warranted.

## C. Merits

■ Plaintiff contends he is not in breach of the Noncompetition Agreement. Wacker asserts that he is. The relevant material facts are not in dispute.

It is undisputed that Wacker's business, both in fact and as defined in the Noncompetition Agreement, includes the manufacture of silicone rubber compounds. This is the business Wacker purchased from Bowers by buying the assets of SilMix, and it is the business Bowers, or any entity in which he has an interest, is prohibited from engaging in by the terms of the Noncompetition Agreement. Bowers concedes that he, and by affiliation CT, is

barred from engaging in the manufacture of silicone rubber compounds by the agreement. Bowers also concedes that CT manufactures its own custom silicone rubber compound that it uses in producing the silicone rubber sponge sheet with tape that it sells to ESP. Bowers, nevertheless, curiously takes the position that he is not in violation of the Noncompetition Agreement, despite his concession that CT manufactures a product that unquestionably overlaps with Wacker's business, because CT does not sell that product into the marketplace, but instead transforms the compound into another product before selling it. This position is untenable.

By admitting that CT indeed manufactures a silicone compound, Bowers has conceded all of the predicate facts necessary to find him in violation of the Noncompetition Agreement. The other prerequisites are contained in the terms of the Noncompetition Agreement preventing Bowers from competing with Wacker and defining the nature of Wacker's business to be used in determining whether Bowers is competing in violation of the agreement. None of these matters is disputed. Accordingly, the Court finds that Bowers is in violation of the Noncompetition Agreement by virtue of CT's engaging in the production of silicone compound.

The only serious[3] argument to the contrary presented by Bowers is that Wacker's reading of the Noncompetition Agreement, particularly its interpretation of the term "compete" is unreasonable and overbroad. Bowers asserts that CT does not compete with Wacker because the only product CT sells into the market is not one that Wacker sells. In other words, Bowers argues that because CT's finished product is different—and is sold into the extruded products market, rather than the silicone compounds market—than Wacker's product, they are not competing. This argument is without merit. The Noncompetition Agreement, by its terms, does not just prohibit Bowers from selling finished products that Wacker also sells. Its language proscribes a much broader range of activity. Specifically, the Noncompetition Agreement does not allow Bowers to, *inter alia,* "directly or indirectly (i) carry on or become involved (directly or indirectly, as employee, owner, director, agent or consultant to) with any business which is competitive in any way with the Business [...]." (Bowers Aff., Ex. A, ¶ 2.) Under the undisputed facts presented, it is clear that Bowers, based on his involvement with CT, is carrying on or involved in a business that is competitive with Wacker. Bowers disputes that the two businesses are competitive, but only in a semantic sense. The Court rejects Bowers's argument regarding the interpretation of the meaning of competition in the agreement, and finds that Wacker's reading of the Noncompetition Agreement, in this respect, is completely reasonable.

Furthermore, Bowers provides no evidence that CT is not competing with Wacker when it manufactures silicone compound internally for use in its production. Nor, under the circumstances, could he. CT clearly is competing with Wacker

---

**3.** Bowers flippantly asserts that the Noncompetition Agreement constitutes an "illegal restraint of trade" and is therefore void and unenforceable. By using this phrase, Bowers appears to be invoking the Sherman Act, which provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign na-

tions, is hereby declared to be illegal." 15 U.S.C. § 1. Suffice to say that this is not an antitrust case, and Bowers makes no effort either to allege a violation of antitrust law in his complaint or to prove one in his motion for summary judgment. To the extent Bowers contends the Noncompetition Agreement is an illegal contract in restraint of trade, he is mistaken.

because it is producing a silicone compound (contrary to the express language of the Noncompetition Agreement) that it formerly purchased from Wacker. The evidence of competition is clear, given that Bowers concedes that the compound CT formerly used in its production was purchased from Wacker, and that CT replaced the compound it used to purchased from Wacker with one it produced in-house. The resulting loss of business to Wacker shows clearly that CT and Wacker are in competition.

It makes no difference that Bowers turns the compound into a different, finished product before it is sold. Wacker does not contend that the Noncompetition Agreement prevents Bowers or CT from engaging in the extruding business. Wacker only contends that the Noncompetition Agreement prevents Bowers from engaging in silicone compound manufacturing, which competes with Wacker. The Court agrees with Wacker that the Noncompetition Agreement proscribes this activity, and Bowers concedes that he is manufacturing silicone compounds. That is the end of the matter.

Moreover, however, acceptance of Bowers's argument would contravene the plain terms of the Noncompetition Agreement and lead to absurd results. If Bowers could, as the logical import of his argument suggests, manufacture all the silicone compound he wished, as long as he did not sell it directly to customers in an unfinished state as Wacker does, the Noncompetition Agreement would be of little, if any, practical effect. The silicone compound at issue is, for lack of a better term, an input or raw material. No contention is made that any customer purchases silicone compound because it wants to own silicone compound. Customers purchase silicone compound because they use it, as CT does, to create other products. Thus, for Bowers to argue that he can make silicone

compound, as long as he turns it into something else before he sells it, is to argue that the Noncompetition Agreement is of no effective consequence. By way of illustration, under Bowers's position, the Noncompetition Agreement could be avoided simply by vertically integrating a business. Instead of having two businesses, one producing silicone compound and selling it to a second business, which then extruded it into a finished product (where even Bowers would concede that the first business would be in competition with Wacker and thus prohibited from doing so by the Noncompetition Agreement), the two businesses could simply combine, with the compound production and extrusion taking place under one roof, and, in Bowers's opinion, not violate the Noncompetition Agreement. The latter scenario is precisely what CT has done. The Court finds that by doing so, Bowers has violated the Noncompetition Agreement. To permit the result urged by Bowers would negate the express terms of the Noncompetition Agreement.

Having concluded that Bowers has violated the Noncompetition Agreement by producing silicone compounds, the Court turns to the more delicate question of whether Bowers is also proscribed by the Noncompetition Agreement from purchasing silicone compound from any supplier other than Wacker. Wacker takes the position that he so proscribed. Bowers, on the other hand, argues that mere purchase of such products would not place him in competition with Wacker and therefore would not violate the Noncompetition Agreement. Bowers contends that Wacker's position amounts to an argument that CT must enter into an exclusive supply arrangement with Wacker at least until the Noncompetition Agreement expires in 2010, and that no such supply agreement was contemplated by the parties when en-

tering into the Noncompetition Agreement.

Neither party has put forward any facts suggesting that Bowers or CT actually has purchased silicone compounds from a supplier other than Wacker. On the record before the Court, it appears only that CT manufactured compounds internally, and has not obtained such compounds from any third-party. Nor has any evidence been presented that an exclusive supply arrangement was made or contemplated by the parties. Accordingly, the Court declines to rule on the subject, believing that any opinion in this regard would be advisory. That the relief sought by this action is declaratory in nature does not permit the Court to render an opinion on the parties' rights under the Noncompetition Agreement based upon a set of facts that does not exist in reality. *See Coffman v. Breeze Corp.*, 323 U.S. 316, 324, 65 S.Ct. 298, 89 L.Ed. 264 (1945). Accordingly, to the extent that Wacker's motion seeks a determination that Bowers would be in violation of the Noncompetition Agreement were he to purchase silicone compound from another producer (or that Bowers seeks a determination that he would not), the Court declines to make such a ruling.[4]

## III. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is DE-

NIED, and Defendant's motion for partial summary judgment is **GRANTED, IN PART**, and **DENIED IN PART**. The Court finds that Plaintiff violated the Noncompetition Agreement by producing silicone compound. Plaintiff's complaint is **DISMISSED**. Because Defendant did not move for summary judgment on its counterclaims for damages and injunctive relief, those claims remain pending.

**IT IS SO ORDERED.**

4. The Court's decision not to rule on this issue is further informed by the statement in Wacker's reply that "if ESP was unhappy with Wacker['s product], it was free to obtain compounds from some party other than Wacker." (Def.'s Reply 3.) It therefore appears that there may be a simple solution to this problem that both parties can live with and that would not require judicial intervention. Based on this statement, and the other facts regarding CT's business, it appears that Wacker would have no problem if CT's customer for the silicone rubber sponge sheet with tape, ESP, purchased the silicone compound input materials from a third-party and

had the materials shipped to CT, which would then extrude the materials into the finished product and sell it to ESP. In fact, it appears that this is precisely the arrangement the parties used back when CT's purchased the compound from Wacker and used it to make products for sale to ESP. Apparently, ESP made the purchase from Wacker and paid Wacker directly, but ordered the compound shipped by Wacker directly to CT. (*See* Ullom Aff. ¶ 5.) The Court notes that only Bowers and CT are bound by the Noncompetition Agreement, not ESP or any third-party producer. The parties are encouraged to reach an agreeable business resolution of this issue.