**GREAT LAKES GAS TRANSMISSION LIMITED PARTNERSHIP,** Petitioner,

v.

**FEDERAL ENERGY REGULATORY COMMISSION,** Respondent.

ANR Pipeline Company, Bay State Gas Company, et al., Long Island Lighting Company, Michigan Consolidated Gas Company, Natural Gas Pipeline Company of America, Northeast Energy Associates and North Jersey Energy Associates, The Peoples Gas Light and Coke Company, ProGas Limited, and Texas Eastern Transmission Corporation, Intervenors.

No. 91–1394.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 4, 1992.

Decided Jan. 22, 1993.

As Amended Feb. 5, 1993.

James D. McKinney, Jr., with whom Bernard A. Foster, III, G. William Stafford, Washington, DC, and Narinder J.S. Kathuria, Detroit, MI, were on the brief, for petitioner. Alex A. Goldberg, Washington, DC, also entered an appearance for the petitioner.

Edward S. Geldermann, Atty. Federal Energy Regulatory Commission ("FERC"), with whom William S. Scherman, General Counsel, Jerome M. Feit, Sol., Joseph S. Davies, Deputy Sol., Randolph Lee Elliott, Atty., FERC, Washington, DC, were on the brief, for respondent. Timm Abendroth, Atty., FERC, Washington, DC, also entered an appearance for the respondent.

J. Gordon Pennington and Daniel F. Collins, Washington, DC, entered an appearance for intervenor ANR Pipeline Co.

Cheryl L. Jones and Barbara K. Heffernan, Washington, DC, entered an appearance for intervenor Bay State Gas Co., et al.

Robert W. Burke, Jr. and James F. Bowe, Jr., Washington, DC, entered an appearance for intervenor Long Island Lighting Co.

Jeffrey M. Petrash, Washington, DC, entered an appearance for intervenor Michigan Consolidated Gas Co.

Carol A. Smoots, Paul E. Goldstein, Paul W. Mallory, Emmitt C. House and Georgetta J. Baker, Lombard, IL, entered an appearance for intervenor Natural Gas Pipeline Co. of America.

Charles H. Shoneman, Washington, DC, entered an appearance for intervenor Northeast Energy Associates and North Jersey Energy Associates.

Thomas M. Patrick, Chicago, IL, entered an appearance for intervenor The Peoples Gas Light and Coke Co.

Paul W. Fox, Washington, DC, entered an appearance for intervenor ProGas Ltd.

F. Nan Wagoner, Houston, TX, entered an appearance for intervenor Texas Eastern Transmission Corp.

Before: MIKVA, Chief Judge, EDWARDS and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The Great Lakes Gas Transmission Limited Partnership petitions this court for review of a certificate of public convenience and necessity issued by the Federal Energy Regulatory Commission ("FERC" or "Commission") pursuant to its authority under section 7 of the Natural Gas Act ("NGA"), 5 U.S.C. § 717f (1988). *Tennessee Gas Pipeline Co.*, 52 F.E.R.C. ¶ 61,257 (1990) (hereinafter "Order"). In 1990, FERC granted Great Lakes a certificate to expand its pipeline facility, but imposed a condition on the certificate providing that Great Lakes would be "at risk" for the construction costs of the facility if, at any time during the depreciable life of the facility, Great Lakes' suppliers did not have an export license from the Canadian National Energy Board ("NEB") for the full capacity of the facility. Great Lakes contends that this at-risk condition is not supported by reasoned, principled decisionmaking on the record. We agree, and grant Great Lakes' petition.

## I. BACKGROUND

Great Lakes is a limited partnership engaged in the transport of natural gas through pipelines that it owns and operates in Wisconsin, Minnesota and Michigan. Since 1967, Great Lakes has transported gas for TransCanada Pipelines, Limited, a Canadian shipper of natural gas.[1] On February 8, 1989, Great Lakes entered into an agreement with TransCanada to increase

(by 417,500 thousand cubic feet (Mcf) per day) the volumes of gas that it shipped under an existing contractual agreement between the parties. The contract for increased service was to commence on November 1, 1990, and run until October 31, 2005, when the underlying contract expired. Amendatory Agreement, *reprinted in* Brief of Petitioner, Addendum at A–41–45, *Great Lakes Gas Transmission Limited Partnership v. FERC*, No. 91–1394 (D.C.Cir.1992).

On February 24, 1989, Great Lakes filed an application with the Commission, under its standard certification procedures,[2] seeking a certificate of public convenience and necessity to expand its existing facilities to transport the increased volumes of gas for TransCanada. Under its proposal, Great Lakes, which already had certificate authority to transport up to 987,500 Mcf of gas per day for TransCanada, would receive the additional gas at an interconnection at the international border near Emerson, Manitoba, and would "transship" the gas to an interconnection at the international border near St. Clair, Michigan. Order, 52 F.E.R.C. at 61,917, 61,918. From there, TransCanada would deliver 285,000 Mcf of the gas to the "Niagara import point projects," a natural gas network serving the northeastern United States, and would deliver the remaining 132,500 Mcf of gas to customers in eastern Canada. *Id.* at 61,907–08. As an initial rate, Great Lakes proposed to charge TransCanada the same rate as that in their existing contractual agreement ("Rate Schedule T–4"). In order to provide the expanded service to TransCanada, Great Lakes also proposed to construct and operate 459.6 new miles of pipeline in Wisconsin, Minnesota and Michigan, and 25 new "aerodynamic assemblies"

---

1. TransCanada currently owns a 31% interest in the Great Lakes Gas Transmission Limited Partnership.

2. Before issuing a certificate, the Commission requires the pipeline applicant to show that the cost of the proposed facility is justified by reasonably anticipated demand, and that the demand will be met by adequate access to natural gas supplies. *See* 18 C.F.R. § 157.14 (1992) (requiring applicant to append "gas supply data" and "market data" to application). In addition,

the applicant must show that its pipeline is fully subscribed under firm shipping contracts for the first ten years of operation. *El Paso Natural Gas Co.,* 55 F.E.R.C. ¶ 61,180, at 61,588 & n. 16 (describing standard section 7(c) certification applications), *on reh'g,* 56 F.E.R.C. ¶ 61,198, *modified,* 57 F.E.R.C. ¶ 61,092 (1991); *Northwest Pipeline Corp.,* 58 F.E.R.C. ¶ 61,079, at 61,-271–72 and n. * (same), *on reh'g,* 59 F.E.R.C. ¶ 61,289 (1992).

at its compressor stations. Great Lakes estimated the cost of constructing the proposed facilities at $438,498,000. *Id.* at 61,-917.

On September 13, 1990, the Commission granted Great Lakes' certificate application, as well as applications from several other gas transporters proposing to construct facilities to transport Canadian gas to the northeastern United States, in a proceeding known as "Phase III" of the Niagara import point projects. Order, 52 F.E.R.C. at 61,905. However, citing concern over the supply of Canadian gas into the proposed facilities, the Commission imposed the following condition on the certificates issued:

> Construction and operation of the authorized facilities shall not begin until applicants have filed with the Commission copies of final, long-term export licenses from the NEB of sufficient volume and duration to ensure the full cost recovery of the facilities utilized to transport Canadian gas; or *in the alternative,* the applicants shall be required to bear the responsibility for any shortfall in cost recovery if whatever export authority ultimately granted by the NEB for any of the volumes proves to be inadequate to allow for the recovery of the costs of the facilities approved herein. In that event, the pipeline applicants are *explicitly* prohibited from shifting any of the costs associated with the facilities and services authorized herein onto any of their other customers.

*Id.* at 61,927 (emphasis in original).

The effect of this condition is to place the transporters of gas at risk for the recovery of construction costs if, at any time during the "full cost recovery" period of their pipelines, their Canadian shippers are unable to obtain NEB export authority for the

full volume of gas they propose to transport. Great Lakes' transmission facilities are assigned a 3% depreciation ratio, which means that the full cost recovery period of its expanded pipeline is 33.3 years. *See Great Lakes Gas Transmission Co.,* 43 F.E.R.C. ¶ 61,143, at 61,410 (1988). The condition thus places Great Lakes at risk for construction costs during the 33.3–year depreciable life of its expanded pipeline, unless it can show FERC that TransCanada has 33.3 years of NEB export authority for the full capacity (417,500 Mcf) of the pipeline expansion.[3]

Great Lakes and the other transporters filed for a rehearing and/or clarification of the condition, questioning the requirement that NEB export authorization be equivalent to the depreciable life of the facility. In a clarifying order, the Commission justified the condition as a fair way of allocating the economic risk of building an expensive pipeline between the transporters and their customers:

> [T]he central question is whether it is unfair to impose on the pipelines the risk of cost under-recovery, where changes in Canadian regulatory policy, alternative commercial opportunities for gas suppliers or shippers, or other unknown events could lead to circumstances in which the extension of the export authorizations would not be sought or received. The Commission believes it is far more appropriate and fair that the pipelines bear this risk than for their customers to bear it. This is the purpose of the condition. The Commission sees no reason to guarantee that the pipelines will be able to recover the cost of the facilities even if the facilities are unused. The Commission will not shift this risk to the customers.

**3.** On September 13, 1990, at the time when FERC's certificate authority issued, Great Lakes already had received a conditional authorization from the Department of Energy's Office of Fossil Energy to transship the expanded volumes of gas from Canada, subject to final environmental review of the facilities to be constructed. TransCanada had not yet filed an application with the NEB to increase the volumes of gas that it was licensed to export to and

re-import from Great Lakes. Order, 52 F.E.R.C. at 61,918. On September 16, 1991, TransCanada applied for export authorization for the expanded volumes of gas; six weeks later, on October 28, 1991, the NEB authorized TransCanada to export the expanded volumes of gas from November 1, 1991 until October 31, 2005. National Energy Board of Canada, Order No. GOL–2–91 (October 28, 1991), *reprinted in* Brief of Petitioner, Addendum at A-2.

*Tennessee Gas Pipeline Co.*, 55 F.E.R.C. ¶ 61,484, at 62,641 (1991) (hereinafter "Clarification"). The Commission ruled, however, that the transporters would be able to reallocate the costs of their pipelines in future rate filings, "if they are able to prove that other customers are using the facilities." *Id.* Great Lakes promptly filed this petition for review.

## II. JUSTICIABILITY

As a preliminary matter, we find that Great Lakes has standing to petition this court, and that the issue in the petition is ripe for review.

Section 19(b) of the NGA confers standing for judicial review of agency action on "[a]ny party ... aggrieved by an order issued by the Commission." 15 U.S.C. § 717r(b) (1988). To have standing under the NGA, a petitioner must allege facts "sufficient to prove the existence of a 'concrete, perceptible harm of a real, nonspeculative nature[.]' " *North Carolina Utils. Comm'n v. FERC*, 653 F.2d 655, 662 (D.C.Cir.1981) (quoting *Public Citizen v. Lockheed Aircraft Corp.*, 565 F.2d 708, 716 (D.C.Cir.1977)). Aggrievement under the Act is found when a party suffers "present and immediate harm," *ANR Pipeline Co. v. FERC*, 771 F.2d 507, 515 (D.C.Cir.1985) (per curiam), and when "economic injury is likely to flow from the action sought to be reviewed." *Lynchburg Gas Co. v. FPC*, 336 F.2d 942, 945 (D.C.Cir.1964) (per curiam) (finding aggrievement when an order of the Federal Power Commission con-strained the petitioner's freedom to purchase gas from the supplier offering the lowest rate), *quoted in ANR Pipeline*, 771 F.2d at 516.

The Commission contends that the at-risk condition does not currently cause financial injury to Great Lakes, because it will not cause injury unless, for the years subsequent to 2005, TransCanada fails to renew its contract for expanded service or the NEB does not issue export licenses for gas to be shipped on the facility, and Great Lakes is unable to use the facility to transport gas for other customers. It also appears that the at-risk condition had no effect on the initial rate that Great Lakes was allowed to charge customers, or on the superseding rate implemented in a subsequent filing, and thus has no current effect on Great Lakes' ability to recover the costs of its expanded facility.[4] The Commission argues that, on this record, Great Lakes has no standing to petition for review at this juncture. We disagree.

We find that Great Lakes is currently aggrieved because the at-risk condition has a present injurious effect on Great Lakes' business decisions and competitive posture within the industry. Because of the condition, Great Lakes has the present burden of trying to lock in future shipping contracts and NEB export licenses so that it will not be placed at risk for millions of dollars in construction costs should its expansion facility be underutilized in 2005.[5] In the likely event that Great Lakes cannot

---

**4.** The initial rate that Great Lakes requested and received was the existing rate that it was charging TransCanada for transportation services. Order, 52 F.E.R.C. at 61,935. It is standard agency procedure for FERC to assign an initial rate when issuing a section 7 certificate, and for the utility to challenge that rate in a later section 4 rate filing. *See Atlantic Ref. Co. v. Public Serv. Comm'n*, 360 U.S. 378, 389, 79 S.Ct. 1246, 1253, 3 L.Ed.2d 1312 (1959). Great Lakes admits that it is currently recovering the cost of the expansion facility through a superseding rate, the "incremental rate" approved by the Commission in *Great Lakes Gas Transmission Limited Partnership*, 57 F.E.R.C. ¶ 61,142, at 61,-552–53 (1991).

**5.** FERC argued strenuously, in briefs and at oral argument, that the vagaries of Canadian export licensing and the gas shipping market make the at-risk condition necessary to protect the public from the cost of an economically risky pipeline expansion. If we accept FERC's argument that insufficient NEB export authority or underutilization of Great Lakes' facility will probably occur in the next thirty years, then we must also conclude that Great Lakes is aggrieved because it faces an " 'immediately pressing' " threat of economic injury. *Cincinnati Gas & Elec. Co. v. FPC*, 246 F.2d 688, 694 (D.C.Cir.1957) (quoting *Eccles v. Peoples Bank*, 333 U.S. 426, 432, 68 S.Ct. 641, 644, 92 L.Ed. 784 (1948)); *see also ANR Pipeline*, 771 F.2d at 515–16 (ruling that the NGA's "injury-in-fact requirement" includes a " 'looming unavoidable threat' of harm" (quoting *Cincinnati Gas & Elec. Co.*, 246 F.2d at 694)).

arrange shipping contracts that far in advance,[6] it will have to adjust its finances and investment strategy to prepare for the risk of underutilization. The at-risk condition also injures Great Lakes' competitiveness in the industry. The anticipation of a risk of lower future earnings lowers Great Lakes' creditworthiness, affecting its ability to raise capital by taking on debt. Even if Great Lakes could accelerate the depreciation rate on the facility,[7] to minimize the risk it would bear if the facility was underutilized after 2005, accelerated cost recovery would result in higher rates to Great Lakes' customers and place Great Lakes in a less competitive position. Accordingly, we find that Great Lakes is aggrieved by the at-risk condition because it affects its present behavior and because economic injury flows from it; to find otherwise would ignore the reality of the long-range economic planning involved in the sound management of an enterprise.

■■■■ The Commission also questions whether this appeal is ripe for review. We think that it is. The ripeness doctrine requires that we postpone our review of administrative action when delay would facilitate our examination of the issues without causing significant hardship to the petitioner. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Northern Indiana Pub. Serv. Co. v. FERC*, 954 F.2d 736, 738 (D.C.Cir.1992). We have already determined that the at-risk condition has a concrete effect on Great Lakes' "primary conduct." *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967). We also find that the issue in this case is fit for judicial resolution because it is a purely legal one (wheth-

er the agency's order reflects reasoned decisionmaking), not requiring a developed factual record. Nor are we concerned that we are prematurely meddling with an agency policy that is currently undergoing change or development. For the past two years, FERC has imposed an at-risk condition on certificates for transporters of Canadian gas,[8] and thus it is undisputed that the at-risk condition reflects "crystallized" agency policy, and is suitable for review. *See Mountain States Tel. & Tel. Co. v. FCC*, 939 F.2d 1021, 1028 (D.C.Cir.1991) (finding no ripeness concerns when agency's policy is "crystallized" and the issue is "purely legal").[9]

### III. THE MERITS OF THE PETITION

Section 7(c) of the NGA provides that "[n]o natural-gas company ... shall engage in the transportation or sale of natural gas, ... or undertake the construction or extension of any facilities therefor, ... unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations." 15 U.S.C. § 717f(c) (1988). Section 7(e) of the NGA empowers the Commission to attach to a certificate "such reasonable terms and conditions as the public convenience and necessity may require." 15 U.S.C. § 717f(e) (1988). The NGA's certification provisions form the "heart of the Act," and are the means by which the Commission effectuates the purposes of the Act, "to underwrite just and reasonable rates to the consumers of natural gas," and "to afford consumers a complete, permanent and effective bond of protection from excessive rates and charges." *Atlantic Ref. Co. v. Public Serv. Comm'n*, 360 U.S.

---

6. Great Lakes asserted at oral argument that it is "atypical" for the industry to make shipping contracts for twelve to thirty years in the future.

7. It is unclear to us whether Great Lakes could accelerate the 3% depreciation rate on the facility. Great Lakes has not challenged the 3% depreciation rate assigned to the facility, and stated at oral argument that 33.3 years was a reasonable cost recovery time for the facility.

8. *See* cases cited *infra* note 11.

9. Because we find this petition fit for review, we need not consider whether any advantage we might gain from delay is outweighed by the "hardship" that Great Lakes would suffer if we postponed review. *Consolidated Rail Corp. v. United States*, 896 F.2d 574, 577–78 (D.C.Cir. 1990); *see also Payne Enters., Inc. v. United States*, 837 F.2d 486, 493 (D.C.Cir.1988) (stating that inquiry into petitioner's interest in prompt review is irrelevant when neither court nor agency has an interest in postponing review).

378, 388, 79 S.Ct. 1246. 1253, 3 L.Ed.2d 1312 (1959); *Tennessee Gas Pipeline Co. v. FERC*, 689 F.2d 212, 214–15 (D.C.Cir.1982).

█ It is generally acknowledged that the Commission has "extremely broad authority" to condition certificates under section 7(e). *Transcontinental Gas Pipe Line Corp. v. FERC*, 589 F.2d 186, 190 (5th Cir.1979), *cert. denied*, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980), *quoted in ANR Pipeline Co. v. FERC*, 876 F.2d 124, 129 (D.C.Cir.1989). This power to impose conditions is limited, however, by the statutory requirement that the conditions FERC imposes be "reasonable" and required by the "public convenience and necessity," 15 U.S.C. § 717f(e), and by the authority vested in this court to review FERC's decisionmaking. *See* 15 U.S.C. § 717r(b) (1988). We must scrutinize the administrative record to ensure that FERC's decision to condition a certificate is "reasoned, principled, and based upon the record." *Columbia Gas Transmission Corp. v. FERC*, 628 F.2d 578, 593 (D.C.Cir.1979). This standard of review is intended to be deferential to the Commission's expertise, but it also requires that FERC "articulate the critical facts" and "fully explain" the assumptions and public policy upon which it relied when it decided to impose a condition. *Id.; City of Charlottesville .v. FERC*, 661 F.2d 945, 950 (D.C.Cir.1981). By requiring the Commission to explain its decisions fully and rationally, we can "be confident that missing facts, gross flaws in agency reasoning, and statutorily irrelevant or prohibited policy judgments will come to a reviewing court's attention." *Columbia Gas Transmission*, 628 F.2d at 593.

Great Lakes contends that FERC has, without a full and rational explanation, imposed an at-risk condition in its certificate that it does not impose on transporters of domestic gas.[10] In a standard certification application, a pipeline applicant is required to show that its proposed facility will be fully subscribed under firm shipping contracts for the first ten years or more of operation, and to provide evidence of adequate market demand and gas supplies. In addition, the applicant must show that it has access to its proposed supplies. If these requirements are met, FERC will grant an unconditioned certificate to the applicant. *See supra* note 2. In the last two years, in applications involving transporters of Canadian gas, the Commission has imposed an at-risk condition virtually identical to the one imposed on Great Lakes—requiring NEB export authorization for the full capacity of the pipeline for the full duration of the facility's cost recovery period.[11] This condition never has been imposed on a transporter of domestic gas.

The Commission asserts, however, that the demand it has placed on Great Lakes and other transporters of Canadian gas is simply part of its requirement that pipeline applicants demonstrate that their proposed gas supplies are accessible. According to FERC, NEB export authorization is a potential barrier to the transportation of gas,

10. Great Lakes argued in its briefs that the at-risk condition discriminates against transporters of Canadian gas, and thus violated FERC's "level playing field" policy, the Transit Treaty, and the Canadian–United States Free Trade Agreement. We may not consider these arguments because Great Lakes did not specifically raise them in its request for rehearing. 15 U.S.C. § 717r(a) (1988) ("The application for rehearing shall set forth *specifically* the ground or grounds upon which such application is based.") (emphasis added); 15 U.S.C. § 717r(b) (1988) ("No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do.").

11. *See, e.g., ANR Pipeline Co.*, 54 F.E.R.C. ¶ 61,-032, at 61,114, 61,121, 61,122, *on reh'g*, 55 F.E.R.C. ¶ 61,415, at 62,232 (1991), *appeal docketed, ANR Pipeline Co. v. FERC*, No. 91–1375 (D.C.Cir., Aug. 9, 1991); *Northwest Pipeline Corp.*, 56 F.E.R.C. ¶ 61,006, at 61,046–47, *supplemented*, 56 F.E.R.C. ¶ 61,300, *on reh'g* 57 F.E.R.C. ¶ 61,184 (1991), *amended*, 58 F.E.R.C. ¶ 61,079, *on reh'g*, 59 F.E.R.C. ¶ 61,289, at 62,-058–60 (1992); *Pacific Gas Transmission Co.*, 54 F.E.R.C. ¶ 61,035, at 61,162, *clarified*, 56 F.E.R.C. ¶ 61,291, *on reh'g*, 56 F.E.R.C. ¶ 61,192, at 61,682, *modified*, 57 F.E.R.C. ¶ 61,097 (1991), *appeal docketed, Altamont Gas Transmission Co. v. FERC*, No. 91–1369 (D.C.Cir., Aug. 6, 1991). Additional cases were cited in the Commission's brief. Brief for Respondent at 24 n. 7, *Great Lakes Gas Transmission Limited Partnership v. FERC*, No. 91–1394 (D.C.Cir.1992).

and requiring an applicant to have NEB export authorization is equivalent to requiring an applicant to show that there is sufficient capacity on "upstream" and "downstream" pipelines (pipelines connecting with the applicant's) to carry the gas that the applicant proposes to transport. *See, e.g., El Paso Natural Gas Co.,* 56 F.E.R.C. ¶ 61,198, at 61,769, *modified,* 57 F.E.R.C. ¶ 61,092 (1991); *see also Northwest Pipeline Corp.,* 56 F.E.R.C. ¶ 61,300, at 62,267–68 (imposing an at-risk condition on a certificate because downstream capacity was "uncertain"), *on reh'g,* 57 F.E.R.C. ¶ 61,184 (1991), *amended,* 58 F.E.R.C. ¶ 61,079, *on reh'g,* 59 F.E.R.C. ¶ 61,289 (1992). We find FERC's argument to be unpersuasive for the simple reason that Great Lakes established in its application, to the Commission's satisfaction, that its Canadian gas supplies were adequate and available.[12] Thus, by demanding a showing of NEB export authorization, FERC imposed a requirement on Great Lakes over and above the accessibility showing it typically requires of transporters of domestic gas.

 The final issue to consider is whether the Commission has offered a full and rational explanation of its decision to place Great Lakes at risk for the construction costs of its expanded facility unless it can establish NEB export authorization for the full capacity and depreciable life of the facility. A full and rational explanation is especially important to this court when the condition imposed reflects a shift in FERC's policy or a departure from its typical manner of granting certificates and imposing conditions. *Tennessee Gas Pipeline Co. v. FERC,* 867 F.2d 688, 692 (D.C.Cir.1989) (finding that FERC's imposition of a certificate condition did not reflect reasoned decisionmaking because FERC had " 'swerve[d] from prior precedents without discussion' " (quoting *Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852 (D.C.Cir.1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971)). To require less would "transform judicial

review into a process of rubber-stamping unsupported, and perhaps unsupportable, agency decisions." *Tarpon Transmission Co. v. FERC,* 860 F.2d 439, 442 (D.C.Cir. 1988).

FERC's purported justification of the condition focuses on the uncertainty involved in obtaining NEB authorization for the export of natural gas. In its Order granting the certificate, FERC stated that "[t]o ignore the critical factor of long-term import and export authority, and consequently allow these projects to go forward with no assurance that the Canadian gas proposed to supply it will flow into the pipeline, would not be sufficient action to discharge our statutory duty." Order, 52 F.E.R.C. at 61,927. FERC elaborated its concern over the supply of Canadian gas in the Clarification, stating that "changes in Canadian regulatory policy, alternative commercial opportunities for gas suppliers or shippers, or other unknown events could lead to circumstances in which the extension of the export authorizations would not be sought or received." Clarification, 55 F.E.R.C. at 62,641. According to FERC, it is "far more appropriate and fair" for the pipelines, rather than their customers, to bear the risk of cost underrecovery stemming from the uncertainties associated with NEB export authorization. *Id.* FERC also asserted before this court that the uncertainties associated with obtaining such authorization, standing alone, justify the imposition of the at-risk condition.

We find this explanation of the at-risk condition lacking in several respects. First, FERC has not elucidated the uncertainties associated with obtaining NEB authorization. We note that TransCanada applied for and received NEB export authorization for its expanded contract with Great Lakes in six weeks time.[13] If anything, the NEB's expeditious treatment of TransCanada's application tends to show that export authorization is currently rather easy to obtain. Nor has FERC provided us with

---

12. The Commission admits in its brief that it did not find that Great Lakes' proposed Canadian gas supplies were either inadequate or unavailable. Brief for Respondent at 28.

13. *See supra* note 3.

**434**

evidence that NEB export authorization will become increasingly difficult to obtain, especially twelve to thirty years in the future, when Great Lakes' suppliers will be applying for new authorization. Thus FERC has not substantiated or explained its reasons to view NEB export authorization as an uncertainty.

Second, FERC has not explained why the alleged uncertainties of obtaining NEB export authorization warrant the relatively severe at-risk conditions that it has imposed on Great Lakes. Every pipeline applicant, whether it transports domestic or imported gas, faces certain contingencies that pose a risk of underutilization and cost underrecovery for its proposed facility. These contingencies include the uncertainty of obtaining shipping contracts in the future, unanticipated shifts in market demand and gas supply, "alternative commercial opportunities for shippers or suppliers," and other "unknown events." Clarification, 55 F.E.R.C. at 62,641. Yet, despite these contingencies, FERC allows domestic transporters of gas to receive unconditioned certificates if they have firm supply contracts for the full capacity of their pipeline for only ten years or more. It is not clear to us that the risk associated with NEB export authorization, standing alone, is so much greater than the risk posed by these other contingencies that it warrants the condition that FERC has imposed, which effectively requires Great Lakes to show that its pipeline will be fully utilized for thirty-three years. In short, on this record, FERC has failed to demonstrate that Great Lakes' proposal inherently poses a greater risk of pipeline underutilization and cost underrecovery than would a similar proposal made by a transporter of domestic gas.

IV. CONCLUSION

Accordingly, based on the administrative record of this case, we hold that the Commission's explanation of the at-risk condition does not reflect rational and principled decisionmaking. In so holding, we do not intend to preclude the Commission from considering appropriate at-risk conditions

on transporters of Canadian gas in the future. In a different application, on a different administrative record, FERC is free to explore, through reasoned decisionmaking, whether risks associated with NEB export authorization and the transportation of Canadian gas warrant an at-risk condition. But we cannot give our stamp of approval to FERC's decisionmaking in this case, when FERC has utterly failed to explain why the uncertainties of obtaining NEB export authorization justify the condition that it has imposed on Great Lakes. The Commission's decision is hereby reversed and the petition for review is granted.

*So ordered.*